## OLMSTEAD *v.* MICHELS.

*(Circuit Court, W. D. Missouri, W. D.* November 5, 1888.

**1. EQUITY — CANCELLATION OF INSTRUMENTS — INJUNCTION — BREACH OF CONTRACT.**

Complainant, representing the members of a company proposed to be organized for the manufacture of glucose, called on defendants for the purpose of seeing the process. Before he was permitted to see it, a contract was presented to him by defendants for signature, which he at first declined to sign, as it contemplated the erection of an establishment with a capacity of 2,000 bushels, while his associates had spoken only of one with a capacity of 1,000 bushels, and that he had no authority to sign for them; but signed it on being told that he would not be personally bound by it, and that it was necessary, under a rule adopted by defendants, that no one should see the process unless a contract was signed, and with the understanding that it was to be the basis of a later contract between defendants and the proposed company *Held* that, the scheme having fallen through without fault of complainant, defendants would be enjoined from an attempted enforcement of the contract, and that its cancellation would be decreed.

**2. SAME—REFORMATION OF CONTRACT.**

The fact that at the time the contract was signed complainant spoke of his ability to build a house with a capacity of 1,000 bushels, presents no excuse for a reformation of the contract in that respect, and its enforcement against complainant.

In Equity.

Bill by George P. Olmstead against Jacob Michels to enjoin the prosecution of an action for breach of a written contract, and for cancellation of the contract.

*Peak, Yeager & Ball*, for complainant.

*C. O. Tichenor*, for defendant.

Before BREWER and PHILIPS, JJ.

BREWER, J. Defendant commenced an action at law to recover damages for the breach of a written contract.[1] Complainant filed this bill to enjoin the prosecution of that action, and compel the cancellation of such contract. A brief statement of the grounds of decision is here given. The written contract is perfect in form, and signed by the parties. One ground upon which the complainant rests his bill is this: That this writing signed by the parties, and apparently a contract between them,

[1] Michels v. Olmstead, 14 Fed. Rep. 219.

was not intended as a contract, and was understood by neither of them to be binding. That parol testimony is competent to show that that which appears as a perfect written contract was not signed by the parties with ·the intention of making a contract, and that no binding obligation was assumed by either, is we think unquestioned. A familiar illustration is this: Suppose a gathering of young people in which a moot court is proposed for the amusement of those present, and a suit for breach of promise of marriage is the case to be tried in such moot court, and a young man and a young woman, for the purposes of such trial, sign what upon its face appears to be a contract to marry. Would it for a moment be doubted if, after the evening's amusement was ended, she should bring suit for damages for breach of such marriage contract, that parol testimony was competent to show the purposes for which the paper was signed, and that no real or binding obligations were assumed by either party in signing it. This, which is an extreme case, illustrates the principle upon which complainant rests, and we think the testimony shows that this case falls within that principle.

The facts, in a general way, were these: One Harris came from Detroit as a representative of defendant and two partners, to work up a company here for the manufacture of glucose by the dry process. After some negotiations, several gentlemen, complainant among the number, became interested, and talked of organizing a corporation for the purpose of putting up a building and engaging in such manufacture. Before any definite plans were matured, it was agreed that complainant should go to Detroit, and see the process. In pursuance thereof, he went with Mr. Harris, and there met the defendant and his partners. The talk here among the parties proposing to enter into the organization was the building of a 1,000-bushel house. After complainant reached Detroit, he was there three days without an opportunity to see the process. Talk was going on during these days between the parties, they suggesting the expediency of a 2,000-bushel house. Finally he expressed a desire to see the process before returning home. Then this written contract was produced by one of the three partners, and it was stated that they had agreed upon a rule that no one should see the process unless a contract was first executed. He declined to sign it; in substance saying that the parties who he represented never talked of a 2,000-bushel house, and that he had no authority to sign for them. He was told that he was not to be bound personally by it, but that the signature was necessary to comply with their rules; and probably, from the talk, this contract, thus signed by him, was understood to be the basis of a contract to be thereafter entered into between the three partners and the company to be formed in this place. With that understanding he signed the paper, saw the process, and came home and reported. Thereafter this defendant came on for the purpose of assisting in the organization of the proposed company, but the scheme fell through, and that not through any fault of the complainant. Of the four parties who were present at the time this paper was signed, complainant and defendant being among the number, all agree that the contract as it stands was not to be binding upon

the complainant. The defendant, and perhaps one witness, insist that complainant stated his ability to build a 1,000-bushel house, even if his associates failed to enter into the scheme, and insist that complainant was to be bound by this contract for a 1,000-bushel house. Inasmuch as all who were present, the complainant and the defendant among the number, agree that this contract, as it stands, was not to be binding, it is very obvious that the defendant ought not to be permitted to enforce it. It was not signed as and for a contract, but signed simply as an excuse, and to comply with the rule of defendant and his partners in respect to the disclosure of the process, and probably also as the basis of a contract to be thereafter entered into between the defendant and the proposed company.

Neither can there be, as defendant suggests, a reformation of the contract. Both parties knew what they were signing,—knew what the language of the instrument was. There was no mistake or misunderstanding in this respect; and whatever may be the truth as to the parol understanding in reference to the building of a 1,000-bushel house, it is not true that this contract by mistake was written for a 2,000-bushel house, instead of a 1,000-bushel house. Hence there is no excuse for the reformation of this contract. It must stand or fall as it is written; and, as all the parties agree that as written it was not to be binding as a personal contract, we think the complainant is entitled to a decree cancelling the instrument, and enjoining the action at law; and it is so ordered.

PHILIPS, J., concurs.