### MAY v. CEARLEY et al.

(Court of Civil Appeals of Texas. Texarkana. April 27, 1911. On Motion for Rehearing, May 18, 1911.)

1. DEEDS (§ 70*)—CONVEYANCE—FRAUD—RESCISION.

Where grantors are induced to execute a deed conveying the fee to certain property on the grantee's promise to execute and deliver a written contract binding himself to reconvey the title on the termination of the grantee's use for which the land was conveyed, and the grantee's promise was fraudulently made with no intention of performance, but only to obtain an absolute deed to the land, such conduct was a fraud sufficient, if seasonably urged, to entitle the grantors to rescind.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 165–182; Dec. Dig. § 70.*]

2. CANCELLATION OF INSTRUMENTS (§ 24*)—CONVEYANCE—RESCISSION—REQUISITES.

Where plaintiffs were induced to convey land to defendant for a specified use by an absolute deed on defendant's promise to execute a contract to reconvey on the termination of the use, which promise he did not intend to keep, complainants could not repudiate the deed and

:at the same time retain the consideration, but must offer to place the grantee in statu quo.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 33–38; Dec. Dig. § 24.*]

3. SPECIFIC PERFORMANCE (§ 39*)—ORAL CONTRACT TO RECONVEY—STATUTE OF FRAUDS—REMEDY OF GRANTOR.

Where complainants alleged that they were induced to execute an absolute deed to certain property by defendant's promise to execute a contract to reconvey the land to them on the termination of defendant's use, which promise defendant had refused to perform and did not intend to perform, such fraud was not available to complainants as a means of procuring the legal title to the land after the contract had been fully executed and the relations of the parties had ceased, as distinguished· from a rescission, since to grant such relief would be to enforce ·a parol contract for the conveyance of land, in violation of the statute of frauds.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 114–119; Dec. Dig. § 39.*]

On Motion for Rehearing.

4. REFORMATION OF INSTRUMENTS (§ 47*)—SCOPE OF RELIEF.

Equity may not reform a contract in advance of its attempted enforcement, except in so far as it ·may be accomplished in the correction of written instruments relied on as evidence of the agreement.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 195–198; Dec. Dig. § 47.*]

5. REFORMATION OF INSTRUMENTS (§ 20*)—ESTATE—FRAUD.

Where an error has been committed in reducing a contract to writing through accident, mistake, or fraud of one of the parties without knowledge of the other, so that, when completed, the instrument does not constitute the true record of the agreement, equity on proper showing may grant reformation.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 79, 80; Dec. Dig. § 20.*]

6. REFORMATION OF INSTRUMENTS (§ 16*)—GROUNDS — CONTEMPORANEOUS ORAL CONTRACT—FAILURE TO PERFORM.

Where complainants were induced to execute an absolute deed of certain land by defendant's oral promise to execute a written contract to reconvey the land to complainants on the termination of the use for which defendant purchased the land, defendant's subsequent failure and refusal to execute such contract to reconvey after execution and delivery of the deed was no ground for reforming the deed by inserting a provision for reconveyance.

·[Ed. Note.—For other cases, see Reformation of Instruments, Dec. Dig. § 16.*]

Error from District Court, Wise County; J. W. Patterson, Judge.

Action by R. N. Cearley and others against John May. From a judgment for plaintiffs, defendant brings error. Reversed and remanded.

McMurray & Gettys, for plaintiff in error. ·W. H. Bullock, for defendants in error.

HODGES, J. This suit was instituted by the defendants in error in the court below against the plaintiff in. error to recover a :tract of land, and cancel a deed which they alleged was a cloud upon their title. The petition, in substance, alleges that on or about the 23d day of September, 1906, the plaintiffs were the owners of a tract of land consisting of 55 acres, which is described by metes and bounds; that after some negotiations between R. N. Cearley, one of the plaintiffs and acting for all of them, and John May, they sold all of the rock on the land referred to that was suitable to be used as material for ballasting railroads, and gave to May the right to erect thereon a rock crusher, tenement houses, stables, and lots necessary to be used in the business of crushing the rock. It is also alleged that it was understood and agreed between the parties that May should have the use and occupancy of the land so long as the crusher should be operated thereon; that, as soon as that machinery was removed, May should immediately place the plaintiffs in possession. It is averred that the plaintiffs were ignorant of the proper form which should be adopted in conveying the right purchased by May, and relied upon the latter to have the conveyance prepared; that May prepared and presented to R. N. Cearley a deed "with the usual covenants of general warranty"; that this deed was executed and acknowledged by all of the plaintiffs, believing it to be a correct expression of their agreement. They further allege that afterwards they discovered that the deed contained no provision for a reversion of the title to the land; that the deed was prepared in this form by May in order to deceive the plaintiffs, knowing that they had relied upon R. N. Cearley to see that the conveyance was properly prepared; that, after making known this discovery to May, he told them the proper method of preserving their rights was for them to execute the deed and for him (May) to make a contract with·provisions for the reversion of the land to them after the removal of the crusher, and promised that he would have such contract prepared and execute the same. They allege that they relied upon those representations and were thereby induced to deliver the deed in that form; that May, intending to deceive and defraud them and to secure for himself the title to the land, refused to execute said agreement; that thereafter on the 25th day of September, 1906, he erected a rock crusher and such tenements on the land as were necessary for the operation of his business, continued the use of the same while extracting rock, and thereafter removed the crusher and tenements from the land and placed the plaintiffs in possession of the same. They further aver that May has since been setting up claim of title in himself, and is attempting to sell the land in violation of his contract, and that such claim is a cloud upon their title. The petition concludes with a prayer that they have judgment for the land and the cancella-

tion of the deed referred to as a cloud upon their title. The defendant, plaintiff in error here, pleads not guilty, a general denial, claims ownership of the land under an absolute deed from the plaintiffs, denies that there was any written contract between them, and pleads the statute of frauds. Upon a trial before the court, a judgment was rendered finding that the deed held by May was a cloud upon the title of the plaintiffs, and directing that the same be canceled. It was further ordered that May should be let into possession of the land, or so much thereof as was necessary for the purpose of blasting, crushing, and removing rock therefrom, should have the term of five years in which to remove the rock, and should have the reasonable and proper use of the land for that purpose during the five years, with the privilege of erecting buildings and all improvements necessary to carrying on his business. It was further provided that May should have the right at any time before the expiration of five years to remove his machinery and improvements from the land.

The evidence shows that at or about the date mentioned in the petition May approached R. N. Cearley for the purpose of buying some cheap land on which there was plenty of rock; that he desired the rock for the purpose of being used in furnishing ballast for the Ft. Worth & Denver City Railroad Company, and so informed Cearley; that, after some negotiations, they entered into a contract by which May, in consideration of $555 received the deed, absolute in form, and conveying a fee-simple title to the tract of land in controversy. The testimony is conflicting as to what passed between the two previous to the execution of the deed. Cearley testified that he sold May the rock on the land for the price of $10 per acre, with the understanding that the land was to come back to him (Cearley) when May got through with it; that May agreed at the time that the deed from Cearley to him should specify that condition, and that such was the proper form in which the conveyance should be expressed; that the final agreement was that May was to deed the land back to him for $1, which he regarded as a mere nominal consideration. He testified that May said to him: "You understand you have to buy the land back." And further testified as follows: "And we agreed on a dollar, and we went back to the house, and I sat back behind the house, and Mr. Mayfield prepared the deed and I signed it; and, after I signed it, Mr. Mayfield read it over to me, and I saw that he had left out the agreement that the land was to come back to me when they were through with it. I walked around to where Mr. May was, and told him that I thought they had left out the most important part of the contract, and he said, 'What is it?' and I said, 'It is not written in this deed that the land is to come back to me when you get through with it;' and I said,

'That ought to be in the deed.' He was in a hurry to go, and he turned around to the notary public and told him to write a contract to the effect that the land was to come back to me when they were through with it, and he told me he would sign it and bring it back to me. He did not bring it out to me." It is further shown by the testimony of Cearley that he acknowledged the deed after this conversation with May, and thereafter it was acknowledged by his wife and the other parties to the suit, who appear to be his children, and a son-in-law. Cates, the notary public, who was a witness for the plaintiffs in the suit, testified to substantially the same conversation between May and Cearley as that detailed by Cearley. He says that both Cearley and May requested him to prepare the contract spoken of by Cearley, and that he (Cates) agreed to do so, but had failed. Cearley further testified that afterwards he asked May about this contract he was to have prepared and signed, but fails to state what May replied. It is further shown by the testimony that May placed a crusher and some buildings and improvements upon the land and took the rock from about two acres, consuming about eight months; that, on account of the rock's proving unfit for ballasting material, he discontinued blasting and moved his crusher; that he informed R. N. Cearley at the time that he would probably want to use the rest of the rock in the operation of a cement plant, to which no objection was made. The facts alleged are in some important respects different from those proven, and a portion at least of the court's judgment is predicated upon a state of facts neither alleged nor proven. There was no evidence of any agreement between the parties as to what time May should have within which to crush and remove the rock from the premises; nor was there any evidence of what would be a reasonable time within which that might be done. This feature of the judgment, however, is not one of which the plaintiff in error could complain if the court was correct in canceling the deed by which May held the land, or the right to take the rock therefrom. If the defendants in error had the right to a cancellation of their deed, that right rested upon the ground that its execution and delivery had been procured by fraud. The fraud charged is that "the said defendant, intending to deceive plaintiffs, and knowing that the other plaintiffs named above relied upon R. N. Cearley to see that said agreement was properly prepared, then told plaintiff that the proper method of preparing the transaction by conveyance was for plaintiff to execute said deed, and for him, the defendant, to make a contract with provisions for the reversion of the land to plaintiffs after the removal of the crusher, as aforesaid, and that he would have such contract prepared and would execute the same. Plaintiffs relied upon the representations of the defendant, and were there-

by induced to execute and deliver the deed aforesaid; but said defendant, intending to deceive and defraud plaintiffs, and to secure for himself the title to said land, refused to execute said agreement."

[1] If it be true that defendants in error were induced to execute and deliver to May a deed absolute in form and conveying a fee-simple title upon May's promise to execute and deliver to them a written contract binding himself to reconvey the title to the land when his use ceased, and if it further appeared that May's promise to execute and deliver this contract was fraudulently made, with no intention of performance, and for the purpose of obtaining a fee simple deed to the land, we see no reason why this would not constitute a fraud sufficient, if seasonably urged, to entitle the defendants in error to a rescission of their original agreement. C., T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Touchstone v. Staggs, 39 S. W. 189. But the right of the defendants in error to a cancellation rested exclusively upon their right to rescind. They cannot avoid the effect of their deed as long as their deed is permitted to stand, and the deed cannot be annulled until they have shown a state of facts entitling them to exercise the right of rescission.

[2] They cannot repudiate the deed and retain the benefits which they received in exchange for its execution and delivery. They must, so far as equity may demand, restore May to his original status. The evidence very clearly shows that defendants in error received from May the full cash consideration, $550, for the land; that May was to have the use of the land for the purpose of crushing and taking rock for an indefinite length of time. He was to have all the rock. At the time of trial he had only taken rock from about two acres, and intended to continue his use of the premises in operating a cement plant. It thus appears that May had not then exhausted the rights for which he had paid, even taking Cearley's view of the contract. The court evidently reached the same conclusion, and for that reason entered a decree in which there was an attempt to protect those rights. But in doing this he ignores the fact that his interference is justified only upon the ground that the defendants in error have a right to be relieved of their contractual obligations to May, and proceeds to impose terms upon which future contractual relations shall be continued. If the deed was fraudulently procured, and for that reason should be canceled, then the parties were without any contract. Their rights should have been adjusted, not by imposing new obligations, but by requiring restitution, as near as could be done in accordance with their equities. If May was to be deprived of his legal title, then the Cearleys should be made to return a portion, at least, of the purchase money which they had received.

But there were neither pleadings nor evidence which would authorize the court to do this. According to our construction of the original petition of the defendants in error, it does not ask for a rescission of the original contract.

[3] They appear to charge the fraud, not as a ground of rescission, but as a means of again procuring the legal title to the land after the contract had been fully executed and the relations of the parties had ceased. This is an effort to do indirectly that which is prohibited by the statute of frauds from being done directly. The parties may by amendment state a case in which a cancellation should upon proper evidence be awarded.

The judgment is, we think, erroneous, and is therefore reversed and the cause remanded.

### On Motion for Rehearing.

Defendants in error contend in their motion for rehearing that under their pleadings and the facts proved at the trial they are entitled to have a "reformation of the contract" with May.

[4] Courts of equity have no authority to reform contracts in advance of their attempted enforcement, except in so far as this may be accomplished in the correction of written instruments relied on as the evidence of contracts. Pom. Eq. Jur. §§ 112, 870.

[5] But the doctrine is elementary that where a contract has been made and in reducing it to writing an error is committed through accident, mistake, or the fraud of one of the parties without the knowledge of the other, so that when completed the instrument does not constitute a true record of the agreement, a court of equity has the power, under a proper showing, to reform the writing so as to make it speak the truth. More than this the court cannot do. It is not authorized to make a contract for the parties; nor can it put into the instrument anything except what the parties by their original agreement intended should be there.

[6] The only writing involved in this controversy brought to the attention of the court is the deed from the Cearleys to May. We are not authorized to reform that instrument, because both the pleadings and the evidence show that it contains exactly what the parties intended that it should. R. N. Cearley, who made the contract of sale and who appears from the evidence to be the only beneficiary among the grantors, understood fully the character of the conveyance he was making; and because he did so understand its import he insisted that May should bind himself thereafter in writing to reconvey at the end of his tenure. This agreement May has failed to comply with, and Cearley is now left without any written evidence of its having been made. As stated in the original opinion, if the execution of the conveyance by the defendants in error to

May in that form was procured by fraud, it might, upon a proper showing, furnish grounds for a rescission of the contract and a cancellation of that instrument; but that cancellation should not be awarded except upon a state of facts which would justify a rescission. "When there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing it understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept." 34 Cyc. 922. The instrument must stand or fall as it is written. Olmstead v. Michels (C. C.) 36 Fed. 455, 1 L. R. A. 840; Brintnall v. Briggs, 87 Iowa, 538, 54 N. W. 531; Sanford v. Gates, 21 Mont. 277, 53 Pac. 749.

The motion for rehearing is overruled.