FAVILLE et al. v. ROBINSON et al. (No. 5972.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1918. Rehearing Denied March 27, 1918.)

1. EVIDENCE ⊛419(3)—DEEDS—PAROL EVIDENCE TO SHOW CONSIDERATION.

In a suit to cancel a deed, the consideration of which was recited to be "one dollar, love and affection, and other valuable considerations," parol evidence was admissible to show that the consideration was in part an agreement by the grantee to make a will in favor of the grantor; such evidence merely adding to the consideration recited and not contradicting it.

2. TRIAL ⊛312(1) — INSTRUCTIONS — EFFECT OF SPECIAL VERDICT.

In an action to set aside a deed, it was not erroneous for the court to inform the jury, after retirement, of the legal results of their answers to issues submitted.

3. TRUSTS ⊛44(1) — EVIDENCE — DEGREE OF PROOF.

Proof of an express trust must be clear and satisfactory.

4. DEEDS ⊛211(3)—TRUSTS ⊛44(2)—EVIDENCE—FRAUD—SUFFICIENCY.

In a suit to cancel a deed for fraud, or in the alternative to decree that grantee held the land in trust for grantor, evidence *held* not to sustain a verdict for plaintiff.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Kate Robinson and others against Margaret Faville and others for the cancellation of a deed. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Terrell & Terrell, of San Antonio, for appellants. James F. Boyls and Lewright & Douglas, all of San Antonio, for appellees.

FLY, C. J. This cause was tried upon a third amended petition, in which it was alleged by appellees, Kate Robinson and her husband, George C. Robinson, as against Margaret Faville and Ada M. Atchison, appellants, that on January 1, 1915, Kate Robinson was seised and possessed of a certain lot or parcel of land on Soledad street in the city of San Antonio; that on January 23, 1900, Margaret Faville, the mother of Kate Robinson and Ada M. Atchison, obtained a decree of divorce from her husband, F. D. Faville, in which decree a life interest in the property in question was vested in Mrs. Faville, and it was provided that at her death the property should be divided between the two daughters of the parties, Kate Robinson to receive two-thirds and Ada M. Atchison the remaining one-third. Afterwards, on January 23, 1900, the two daughters, joined by their husbands, conveyed the property in controversy to their mother, Mrs. Faville, the recited consideration of the deed being "one dollar, love and affection, and other valuable considerations." It was alleged that the true consideration for the deed was an agreement upon the part of Mrs. Faville that she would execute and leave a will devising all of the property to Kate Robinson; that on or about December 8, 1906, a will was executed by Mrs. Faville, in pursuance of the agreement, in which the property was devised to Kate Robinson, subject, however, to a charge of $1,000 to be paid by the devisee to Ada M. Atchison. It was alleged that on or about October 31, 1914, appellees were ordered by Mrs. Faville to move away from the property, and she, in terms, repudiated the agreement as to the will, and denies that such agreement was made by her to devise the property to Kate Robinson. It was prayed that all claims of Ada M. Atchison be canceled, as well as the conveyance of appellees to Mrs. Faville; that title to the property be vested in said Kate Robinson,

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and in the alternative that the court decree that Mrs. Faville holds the property in trust for Kate Robinson, subject only to the life interest of Mrs. Faville. The cause was submitted on special issues to a jury and the answers returned, judgment was rendered that the deed of conveyance made by Kate Robinson to Margaret Faville for two-thirds of the property be set aside, and that she have the same rights in the land vested in her by the decree of divorce in the case of Margaret Faville v. F. D. Faville, that, Ada M. Atchison having disclaimed, appellees recover nothing as to her, and that appellees recover of Margaret Faville all costs except those incurred as to Ada M. Atchison, which were adjudged against appellees.

The following issues were submitted to the jury, to which the attached answers were given:

"First. Is it true (as alleged in substance by the plaintiff) that at the time when the plaintiff Kate Robinson and her husband executed and delivered the deed to the defendant Margaret Faville, the said defendant Margaret Faville agreed with and promised to the plaintiffs that she, the said Margaret Faville, would make a will devising or leaving to the said Kate Robinson the property (lot of land and improvements) on Soledad street, subject to a charge thereon of one thousand ($1,000.00) dollars to be paid to Mrs. Ada M. Atchison by said Kate Robinson; that said promise or agreement, if any, was the consideration and inducement to said Kate Robinson and her husband for the execution and delivery of said deed by them; and that but for said promise or agreement, if any, the said Kate Robinson and her husband would not have executed and delivered said deed? We, the jury, answer: Yes.

"Second. When did the plaintiff Kate Robinson first learn that the defendant Margaret Faville had repudiated said agreement or promise, if any? We, the jury, answer: November, 1914."

[1] The second assignment of error complains of the refusal of a special instruction to the jury to return a verdict for Margaret Faville, because there was no proof of either fraud or mutual mistake when the deed of the daughters to the mother was made and appellees could not contradict the recited consideration. There was no attempt made to contradict the consideration recited in the deed, but only to add to the consideration. As said in Taylor v. Merrill (64 Tex. 494) hereinbefore cited, in answer to a contention similar to the one made in this case:

"What the answer did seek to do was to show that the note and deed did not express the entire consideration for which the notes were given. It is a well-settled rule at common law that where no consideration is recited in a written contract one may be shown by extraneous proof; and, moreover, that such proof may be used to vary the consideration of which there is a recital. * * * Whether this be an exception to the rule that parol evidence is not admissible to vary or contradict a written contract, or in consonance with it, the principle is as well established as the rule itself. It has met with various applications, and, among others, that when the whole consideration is not expressed, in such case parol evidence is admitted to supply the deficiency."

Again, in the same case, it is held:

"This principle of allowing extraneous proof of a different or additional consideration is not founded upon any right, such as is enforced in courts of equity, to have an instrument reformed when, through fraud, accident, or mistake, it does not state truly the contract of the parties. It is a common-law rule, and enforced in courts having common-law jurisdiction. In the present case, we think no allegation of fraud, accident, or mistake was necessary to be made."

The ruling is cited and followed in Boren v. Boren, 29 Tex. Civ. App. 222, 68 S. W. 184. The effect of showing an additional consideration did not destroy, nor tend to destroy, the deed. The cases cited by appellant are not to the contrary.

It is held that where a party, promising to do an act, did not intend to perform it at the very time of making the promise, it would be such fraud as would support a rescission of the contract. Insurance Co. v. Seidel, 52 Tex. Civ. App. 278, 115 S. W. 945; Wyatt v. Chambers, 182 S. W. 16. There is an allegation bringing this case within the rule, but a total lack of evidence to show, if Mrs. Faville ever made the agreement attributed to her by Mrs. Robinson, that she intended when she made the agreement that she would comply with it. Mrs. Robinson swore that she believed her mother intended to meet the terms of the contract and carry it into execution. She intimates that her mother was led to change her mind through the influence of Mrs. Atchison. If this was true, Mrs. Robinson failed to make out a case under the pleadings. Mrs. Faville admitted that she intended to destroy the will when she made it, but that intention was formed six years after the alleged agreement was made and the deed executed. In the cited case of Insurance Co. v. Seidel, the court said:

"It is the general rule that a promise to perform some act in the future will not amount to fraud in the eyes of the law; and, although it may have been the propelling inducement to the execution of the contract, and though it may have been totally disregarded, it could not be made the basis for a rescission. There is, however, an exception to the rule recognized in Texas, in this: That if, at the time the promise is made, it was the design and intention of the party making it to disregard it, and no intention to perform it, and it was only made to deceive and intrap the other party, then such promise, in case the refusal to perform took place, would amount to such actual fraud as would justify and authorize the rescission of a contract induced by such promise."

To the same effect are Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, Railway v. Smith, 98 Tex. 553, 86 S. W. 322, and May v. Cearley, 138 S. W. 165.

[2] The morning after the case was submitted to the jury they returned into court and asked if question 1 would determine the final division of the property, which the court did not answer, and afterwards they presented the following message in writing to the trial judge:

"A misapprehension has arisen as to the wording of the charge to the jury in question

No. 1: If we may assume the amount of $1,-000.00 is merely nominal and could substitute the words, 'one-third or its equivalent to be paid to Mrs. Ada M. Atchison by said Kate Robinson,' a verdict could be reached at once."

To that communication the court replied:

"The only duty you have to perform is to answer the questions propounded to you as they are written, and you have nothing to do with the legal effect or consequence of your answers. But, as from the language of your communication you appear to be under the impression that it is a suit to enforce the carrying out of the alleged agreement, you are instructed that this suit is not for that purpose, but is a suit merely to set aside or cancel the conveyance made by Mrs. Kate Robinson and her husband to her mother."

The first paragraph of the reply of the court's answer was unobjectionable, but the latter paragraph was purely gratuitous and absolutely unnecessary. It was objected to, however, on the ground that it informed the jury as to the result of their verdict, and, if that be true, we fail to see that it in any way affected the result. The issues were simple, and no jury of even ordinary intelligence would fail to discover the effect of their answers on the judgment of the court. The desire seemed to be to have the form of the question changed so that they could find something in favor of a party who had disclaimed all interest in the land. The paragraph of which complaint is made did not have any effect on the verdict of the jury so far as Mrs. Faville is concerned. The jury in effect informed the court that they found against Mrs. Faville, but desired to give Mrs. Atchison one-third of the property. How the language of the court could have been prejudicial to appellant is not apparent, and no effort is made to clear up the matter. There is nothing in the record that sustains the insinuation made by appellant that the jury indulged in any sympathy, or were influenced by prejudice against any one.

We have seen no case in which it is held that the action of a court, in informing a jury of the result of their answers to special issues would be ground for reversal. Three cases are cited by appellant, two decided by the Court of Civil Appeals of the First District, viz. Fain v. Nelms, 156 S. W. 281; Railway v. Hodnett, 182 S. W. 7. Patterson v. Bushong, 196 S. W. 962, was decided by the Ft. Worth court. In the Fain-Nelms Case, an attorney told the jury what the effect of their answers would be, and the court held that the argument was improper, but refused to reverse on that ground. The court said:

"We are inclined to the opinion that counsel only told the jury what they already knew, and we cannot believe that they disregarded the evidence and charge of the court, and were influenced by the argument."

In the Hodnett Case again the argument of counsel was considered, but the court refused to commit itself on the subject.

The third case, Patterson v. Bushong, was decided by the Court of Civil Appeals of the Second District, and in it again the argument of counsel was under consideration, and again the court declined to commit itself to the proposition that the argument was such error as to necessitate a reversal.

The only case coming under our consideration, in which the question before this court was directly decided is the case of Railway v. Casey, 172 S. W. 729, by the Court of Civil Appeals of the Sixth District. In that case the court submitted special issues to the jury, and then gave a general charge, informing the jury that they should find for one party under certain facts and for the other party under a different state of facts. The court in reply to the argument of counsel held:

"This argument is based upon the assumption that the jury would take into consideration the character and conditions of the parties to the suit, and would be moved by a feeling of sympathy for the plaintiff. It may be that in controversies of this character such emotions do sometimes control the verdicts of juries; but, in the absence of some evidence to that effect, we cannot assume that such bias and sympathy existed. The mere finding of facts favorable * * * is not sufficient when the evidence is of that character which warranted such finding. To gratuitously assume that a jury which has been properly tested and selected yielded to such sympathy, or was probably controlled by such emotions under such conditions, is to impeach the system of trial by jury for being fundamentally unreliable. Where a general verdict is to be rendered, the jury are necessarily informed of what is required to be found in order to entitle either party to a judgment. Evidently the law does not contemplate that such information should be concealed from juries in order to insure absolute impartiality. The error, if any there was in giving this general charge, was harmless, and does not warrant a reversal of the judgment."

The deed from Kate Robinson and Ada M. Atchison to Margaret Faville recited that it was executed in consideration of the sum of $1, love and affection, and other valuable considerations, and it was proper to allow testimony to explain the deed and show what the "other valuable considerations" were. As said by the Supreme Court of Kentucky, in Gully v. Grubbs, 1 J. J. Marsh. 387, 389, quoted in Devlin on Real Estate, § 830:

"A deed is not conclusive evidence of everything which it may contain. For instance, it is not the only evidence of the date of its execution; nor is its omission of a consideration conclusive evidence that none passed; nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent considerations. And by analogy the acknowledgment in a deed that the consideration had been received is not conclusive of the fact. This is but a fact. And testing it by the rationality of the rule which we have laid down, it may be explained or contradicted. It does not necessarily and undeniably prove the fact. It creates no right. It extinguishes none. A release cannot be contradicted or explained by parol, because it extinguishes a pre-existing right. But no receipt can have the effect of destroying, per se, any subsisting right. It is only evidence of a fact."

In the Pennsylvania case, cited in a note to section 831, of Devlin on Real Estate, of

McMullin v. Glass, 27 Pa. 151, an owner of land conveyed it to another, the deed expressing a consideration in money, and acknowledging receipt of the consideration. The true consideration, however, was the parol agreement of a third party to devise to the grantor a certain farm, and such third person executed his will at the same time, making in it such a devise. The court held that the true consideration could be shown. The eighth, ninth, and tenth assignments of error are overruled.

The only evidence in this case to add to the consideration of the warranty deed made by Mrs. Robinson and Mrs. Atchison to Mrs. Faville is that of Mrs. Robinson and her husband. Her version is:

"I made this deed because my mother promised to make a will and deed me the place. * * * I will state that I did not get a dollar, nor any money, for signing this deed. I would not have signed this deed if my mother had not made the promise to make a will and deed me the place."

Six years after the deed was executed to Mrs. Faville the latter made a will in which she devised to Mrs. Robinson all of her property, real and personal, that remained after paying her debts, upon condition that she pay Mrs. Atchison $1,000, and if such payment was not made in six months after the death of the testatrix, then one-third of the estate was devised to Ada Atchison, and the remainder to Kate Robinson. This is George C. Robinson's version of the agreement with Mrs. Faville when the deed to her was executed:

"The agreement between Mrs. Faville and my wife was that if we would sign this deed, she would make a will and give her daughter the place, all of it. Mrs. Atchison was to get $1,000, or get the value of the place at her death, at the last—she was to get the full value of one-third; in other words, at the time of the making of the deed my wife was to get a two-thirds interest, and Mrs. Atchison was to get a one-third interest in money."

Mrs. Faville and Mrs. Atchison denied that there was any agreement made with appellees as to devising the property to Kate Robinson. Mrs. Faville swore that she- executed the will because she was worried and harassed by Kate Robinson, and because she was afraid of her. She afterwards destroyed the will.

In this case no reason can be given for making a deed to Mrs. Faville with the understanding either that all of the land conveyed by deed should be devised to Kate Robinson as testified to by her, or that all of it should be devised to Mrs. Robinson charged with $1,000 in favor of Mrs. Atchison, if the donation feature is rejected, except it was with the intention upon the part of Mrs. Faville and Mrs. Robinson to obtain Mrs. Atchison's part of the land or a large part thereof for nothing. None of the testimony shows that she knew anything about the secret understanding between her mother and Kate Robinson. She in good faith made a donation to her mother of her interest, thinking that her sister was in good faith donating her part of the land to the mother. A fraud was perpetrated upon her, if the agreement alleged and sworn to by Mrs. Robinson was made because no reason was given for the agreement to devise the whole of the land to Mrs. Robinson, and none is apparent unless the agreement was made to deprive Mrs. Atchison of her interest in the land. It may be that she is perfectly satisfied with having parted with her title, but her satisfaction is based on the hypothesis that she was assisting her mother, and that her sister had joined her in her kind purpose. Under the testimony of appellees, they and Mrs. Faville were guilty of a deception, and, instead of coming, as they are compelled to do in order to obtain redress, into a court of equity with clean hands, they came with the suspicion of fraud resting upon them. After the deed was made, if the testimony of appellees is true, Mrs. Faville had obtained no additional interest in the land, the only changes made by the deed being that Mrs. Faville was required to devise the land, when originally it was not hers to devise, and provision was made to deprive Mrs. Atchison of her part of the property and give it to Mrs. Robinson.

[3, 4] While the evidence of Mrs. Robinson sustained the allegations of the petition, the evidence of her husband was in several points in conflict with her testimony, and this conflict might not have any other influence, yet it would be a circumstance that would impair the clearness and satisfactory character of the evidence to prove a trust. Proof as to an express trust, as well as an implied or constructive trust, must be clear and satisfactory. Mead v. Randolph, 8 Tex. 191; King v. Gilleland, 60 Tex. 271. Not only was the evidence of the two plaintiffs contradictory and unsatisfactory, but it was absolutely denied by Mrs. Faville and Mrs. Atchison.

Why Mrs. Faville would desire to obtain one daughter's share of the estate from her in order that she might give it to the other does not appear. Mrs. Robinson, it would seem, was amply repaid for her kindness to her mother by obtaining through the decree in the divorce suit twice as much of the property as her sister received, but she was not satisfied, but wanted the whole of it. The evidence is too unsatisfactory to sustain the verdict. Dyess v. Rowe, 177 S. W. 1001.

The other assignments of error present matters not likely to arise on another trial and need not be considered.

The judgment is reversed, and the cause remanded.