UTILITIES INDEMNITY EXCHANGE v. BURKS et al.   (No. 8020.)

Court of Civil Appeals of Texas. San Antonio. June 6, 1928.

Rehearing Denied July 2, 1928.

1. Depositions ⬅73—Reasonable compliance with law regarding return of depositions is sufficient, in absence of charge of fraud (Rev. St. 1925, art. 3751).

Reasonable compliance with Rev. St. 1925, art. 3751, relating to returning depositions by individuals, is sufficient, in absence of any charge of fraud.

2. Evidence ⬅359(4)—Permitting X-ray pictures of skull of injured employee attached to doctor's deposition to be exhibited to jury held not error.

In action to set aside award for workman's compensation, permitting X-ray pictures of skull of injured employee, attached to deposition of doctor, whose answers were based especially on his personal examination as skillful expert surgeon of employee's head, to be exhibited to jury, held not error.

3. Evidence ⬅544—Physician held qualified to testify as expert that electrical burns into skull might cause injured employee to be nervous wreck and regarding other effects.

In action to set aside award for workman's compensation, physician held qualified to testify as expert that electrical burns into skull of employee might cause employee to be nervous wreck for life, and that he would be apt to experience an impaired mind or memory, and that he would be apt to suffer from nervousness, headaches, dizziness, defective eyesight, or other complications, and that he would be affected by extreme heat.

4. Evidence ⬅179(2)—Where plaintiff, having possession, did not produce insurance policy as requested, secondary evidence of contents was proper.

In action to set aside award for workman's compensation, where policy of insurance had been traced into possession of plaintiff to which notice had been given to produce policy and it did not do so, secondary evidence of its contents was proper.

5. Witnesses ⬅37(1)—In action by employer's insurer to set aside workman's compensation award, testimony by employer's office employee held competent to show existence of policy.

In action by employer's insurance carrier to set aside workman's compensation award, testimony of employee in office of employer held competent to show existence of insurance policy.

6. Evidence ⬅75—Where insurer suing to set aside workman's compensation award did not produce policy, it will be most strongly construed against insurer.

Where employer's insurance carrier, suing to set aside workman's compensation award, had policy and did not produce it as requested, it will be most strongly construed against insurer.

7. Trial ⬅312(1)—Where special issue needed clarification, court did not err in answering jury's question, how they should answer special issue in event they wanted to give injured employee lump sum.

Where special issue No. 10 read, "Is this a case where in your judgment manifest hardship and injustice would result to C. O. B. if U. I. E. should fail to redeem its liability, if any, by payment of lump sum instead of by weekly payments of $20 per week?" needed clarification, court did not err in answering jury's question as to how they should answer special issue No. 10, in event they wanted to give injured employee lump sum.

8. Master and servant ⬅405(6)—Evidence warranted jury's finding that injuries to employee's skull from electrical burns were permanent and totally incapacitated employee for work.

In action to set aside award for workman's compensation in which defendants filed cross-action, evidence held sufficient to support jury's finding that injuries to employee's skull from electrical burns were permanent and totally incapacitated employee for performance of any work, manual or otherwise.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by the Utilities Indemnity Exchange against C. O. Burks and another, in which de-

---

fendants filed a cross-action. From a judgment for defendants, plaintiff appeals. Affirmed.

E. C. Gaines, of Austin, for appellant.

T. A. Bledsoe, of Abilene, and E. E. Clack, of Dallas, for appellees.

FLY, C. J. This suit was instituted by appellant against C. O. Burks and T. A. Bledsoe, and it is alleged in the petition that the Industrial Accident Board of the State of Texas, on December 13, 1926, without jurisdiction or authority to act in the premises, made and entered an award and final decision wherein appellant was directed to pay to Burks $480 as accrued workmen's compensation, and $10.38 per week for 300 weeks, beginning on May 20, 1926, less 15 per cent. of the first $1,000, and 10 per cent. of each additional $1,000 thereof, which was directed to be paid to T. A. Bledsoe, as his attorney's fee for representing Burks before the Industrial Accident Board. It was alleged that appellant had, within 20 days from the time the award was made and entered, given notice to the board and Burks and Bledsoe that it would not abide by said award but would file suit in the district court of Nueces county, where the accident occurred, to set aside the award.

The award was alleged to be based on an accident which occurred at Robstown in Nueces county about November 25, 1925, when Burks was employed by the Robstown Electric & Ice Company. Appellees answered by general demurrer and general denial, and set up a cross-action asking that the award of the Industrial Accident Board be set aside and that Burks have judgment for compensation at the rate of $20 per week for a period of 400 weeks in a lump sum, less a reasonable discount for cash payment and less any credits for any amounts already paid. The cause was submitted through special issues to a jury, and judgment rendered on their answers in favor of Burks for $6,472.12, two-thirds of that sum to be paid to Burks and the remaining third to T. A. Bledsoe, attorney for said Burks.

The facts show that on November 25, 1925, the Robstown Electric & Ice Company was a subscriber under the Employers' Liability Law, through a policy of compensation insurance issued by the Utilities Indemnity Exchange, and that said subscriber had in its employ C. O. Burks, who sustained injuries to his head while laboring in the employment of said Robstown Electric & Ice Company, and being paid at the rate of $6 a day. At the time of his injury he had been in the employment of the electric and ice company for three weeks. While engaged in the course of his employment, Burks' head and body came in contact with a wire charged with a heavy voltage of electricity. He was knocked down and was unconscious for two days. The electricity burned the top of his head so that parts of the skull were taken out at the hospital in Corpus Christi, and pieces continued to work out, and had to be taken out, up to the time of the trial. About seven months after his injury he was hired as a foreman of his former coemployees, which job he held for about three weeks and was then discharged. He was in an automobile wreck and was knocked into insensibility and was told the next day of his discharge. No permanent injury was done to C. O. Burks by the automobile wreck. The physician who examined Burks after he was hurt by the automobile testified that the burns inflicted by the electricity were permanent and serious, and would render Burks incapable of performing manual labor during his life. He testified that the automobile accident might have temporarily aggravated the electrical wounds, but not permanently. It was shown that Burks would never improve, but would grow worse, and his mind might become affected. Another physician swore as to the injuries to Burks:

"It is one of the worst electrical burns that I ever saw that got well. This man may be a nervous wreck for the balance of his life."

The same physician, Dr. W. W. Samuels, of Dallas, stated, in answer to a question propounded by appellant as to his opinion as to whether the automobile injury may not have materially aggravated and contributed to his present condition:

"I think it is due to the electrical injury. I think that the automobile injury had nothing to do with the condition that I found him in."

The jury found that Burks was totally incapacitated for work by his injuries on November 25, 1925, and that such total incapacity was permanent. The jury also found that Burks was injured in an automobile accident on May 31, 1926, but that such injury did not cause or contribute to any permanent impairment of the body of Burks. The jury also found that manifest hardship and injustice would result to C. O. Burks if the Utilities Indemnity Exchange should fail to redeem its liability by the payment of a lump sum.

[1] The first proposition of appellant complains of the action of the court in overruling the motion of appellant to suppress the deposition of Dr. I. N. Thompson, because the same did not indicate that it had been sworn to. Afterwards, during the trial, appellees were permitted to withdraw the deposition and carry it to another county for correction as to the jurat. It was afterwards returned to the court with a proper jurat as of the date of the deposition, and when returned the attorney swore that he was present when the deposition was taken and he saw the notary

public swear the witness. The bill of exceptions taken to the overruling of the motion states:

"It is a fact that the deposition of said witness, as returned into court, did not show that it had been subscribed and sworn to by said witness; that is to say, the deposition at the conclusion thereof simply contained the signature of the witness I. N. Thompson, M. D., and there was no jurat following said signature by the notary stating under his seal that the same had been subscribed and sworn to by the witness, although the certificate under the seal of said notary did recite that the witness had subscribed and sworn to said deposition."

That statement seems to be obscure and contradictory one part to another. The statute requires that the officer shall "certify that the answers were signed and sworn to by the witness before him." The statement made and copied herein from one bill of exceptions and repeated in two other bills of exception leaves in doubt as to whether the deposition was not properly certified. However, appellees seem to feel that the jurat was not all that the statute demanded, and by permission of the court withdrew the deposition and had it properly certified. It is complained, however, that it was not returned to the court as it should have been under the statute, because an attorney for appellees brought it by, hand and delivered it to the court. Provision is made in article 3751, Rev. Stats. 1925, for sending in depositions by individuals, the one delivering the depositions making affidavit that he received them from the officer before whom they were taken, and that they had not been out of his hands since taken and had undergone no alteration. This affidavit was practically and substantially made by the attorney, and it is not hinted that there had been any tampering with the deposition or any fraud connected with the correction of the jurat or the delivery of the deposition. The law was substantially complied with, the details required in the return of depositions being merely to guard them from alteration and to secure the safe delivery to the court. A reasonable compliance with the law is sufficient in the absence of any charge of fraud. Pipe Line Co. v. Construction Co. (Tex. Civ. App.) 238 S. W. 331; Davis v. Adkins (Tex. Civ. App.) 251 S. W. 285. As said by Chief Justice Conner in the case first cited, where he held a substantial compliance with the statute was sufficient:

"To hold otherwise would be to give greater effect to the letter of the law rather than to its substance and spirit."

A bill of exceptions reserved by appellant showed that appellees "presented a motion to the court to withdraw said deposition for the purpose of having same corrected in this respect, and the court granted said motion." The bill of exceptions offered no reason for objecting to the manner of returning the deposition, but merely states that it had been "irregularly returned" and that "it had not been returned into court in any such legal form and manner as would make it admissible in evidence." The first proposition is overruled.

[2] The second and third propositions assail certain portions of the deposition of Dr. Samuels relating to certain X-ray pictures of the skull of C. O. Burks attached to the deposition, and on the ground that the court erred in permitting the pictures to be exhibited to the jury. It is significant that the answers of Dr. Samuels were based especially on his personal examination, as a skillful expert surgeon, of the head of Burks. No answer objected to was based alone on the X-ray pictures. The pictures were attached to the answers of Dr. Samuels and properly identified as being pictures taken of the skull of Burks. The doctor was asked to attach to his answers pictures taken of injuries to Burks and identify them by mark, and he did so. The identification was fully sufficient. Dr. Samuels showed that the pictures were taken in his clinic and were consistent with the physical examination made by him of Burks. The second and third propositions are overruled.

[3] Through the fourth proposition, appellant objects to the admission of evidence given by Dr. Samuels in regard to his answers that the electrical burns into the skull might cause Burks to be a nervous wreck for life, that he had seen epilepsy and insanity develop from a few months to a number of years after such a brain injury, and that Burks would never be out of danger of such a development; that Burks would be apt to experience an impaired mind or memory as a result of his injuries; that injury to the brain cells would cause such development; that he is apt to suffer from nervousness, headaches, dizziness, defective eyesight, or other complications; that he would be affected by extreme heat; and that the injured brain cells had affected Burks physically. All of this testimony was objected to because on cross-examination Dr. Samuels testified that he specialized in surgery and was not an alienist or specialist in disorders of the brain or nervous system and would not qualify as an expert in disorders of the brain or nervous system. The injuries to Burks were patent and open to the view of any one. The skull had been burned out or disintegrated on the top of the skull, extending from the anterior margin of the hair to the crown of the skull; the depression in the skull was half an inch in depth and from one to one and a fourth inches wide. The skull was practically destroyed over the scar from the front edge of the hair to the top of the skull. The opening was down to the menninges or membranes which cover the brain. While we think Dr. Samuels was qualified as an expert to testify as to the

probable effects of the wound on the mind and body of the subject, by his long experience with wounds of the skull and brain, still we think any intelligent man could have testified that such a wound would cause nervousness and eventually affect the mind, and that pain would be experienced from the extremes of heat and cold and the other things that might and probably would arise from the wound. Common sense and reason would qualify a man to answer as did Dr. Samuels as to the probable effects of the wound in the head. Dr. Samuels was testifying from actual knowledge of the effects of such wounds as those on Burks that he had thoroughly examined. He was not testifying in answer to hypothetical questions, but from actual facts coming under his observation and from his experience. We think this entitled the doctor to be classed as an expert as to the matters about which he testified. The circumstances of the case did not call for the evidence of an alienist or nerve and brain specialist. Dr. Samuels was shown to be an expert physician engaged in the practice for 25 years. The fourth proposition is overruled. Beasley v. Faust (Tex. Civ. App.) 217 S. W. 179.

[4-6] The fifth proposition depends for its vitality on the eighth bill of exceptions, which did not present any objection to the evidence of D. E. Woods on account of its irrelevancy or immateriality as set out in the proposition. However, the policy of insurance had been traced into the possession of appellant, to which notice had been given to produce the policy. It did not do so, and secondary evidence of its contents was proper. Woods' testimony was competent to show the existence of the policy, as he was an employee in the office of the Robstown Electric & Ice Company and showed knowledge of the policy. Appellant had never denied the issuance of the policy to the electric and ice company. Appellant admits in its supplemental petition that it paid Burks a weekly rate of $20 for 46 weeks, when all disability resulting from the electric burns had ended. This has the appearance of a confession that it had insured the electric and ice company under the Employers' Compensation Law. We cannot imagine an insurance company paying indemnity where it had not bound itself through a policy to do so. If appellant did not issue the policy, it should not have recognized its existence by payment of the weekly indemnity. It had the policy, did not produce it, and it will be most strongly construed against appellant. Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601. The fifth and seventh propositions are overruled.

[7] It appears from the record that the jury came into court and asked the judge "whether they should answer 'yes' or 'no' to special issue No. 10, in the event they wanted to give a lump sum," and the court advised the jury that in that event they should answer "yes," and the jury did answer "yes" to said special issue. A bill of exceptions was taken to the action of the court in answering the question propounded by the jury, on the ground that the jury had nothing to do with the effect of their answer. Of course, the proposition must be confined to the matter to which exception was reserved, although appellant cites in support of the proposition two cases which do not touch on the question of the sufficiency of evidence to sustain a verdict for a lump sum judgment in cases similar to this. While it is the settled practice that usually it is not within the province of the jury to inquire into or be informed of the effect of their answers to special issues, still this rule does not always apply. For instance, in cases where it is incumbent on juries to find the amount of damages, and they certainly would know that the guilty party would pay and the injured party receive such damages. The jury, as indicated in this case, had concluded to give Burks a lump sum as damages for his injuries, and the answer of the court did not alter or affect that intention in any manner. The jury said to the court:

"If we want to give the defendant his compensation in lump sum, do we answer special issue No. 10 'yes' or 'no'?"

Special issue No. 10 was:

"Is this a case where in your judgment manifest hardship and injustice would result to C. O. Burks if the Utilities Indemnity Exchange should fail to redeem its liability, if any, by the payment of a lump sum instead of by weekly payments of $20 per week?"

The question needed clarification, and the court did not err in giving it, for the jury showed by their question that they had determined that Burks was entitled to "his compensation" and that they wanted to give the compensation to him in one payment. Appellant assumes, however, that "there can be no debate upon the proposition that the action of the court was clearly error," and states that the only question is whether it resulted in injury to appellant, while admitting that Courts of Civil Appeals have held that the insurance company in cases like this only pay the present cash value and there is no injury. It is argued, however, that the opinions are not authority and "ought not to be even persuasive." The cases referred to are, we suppose, Faville v. Robinson, 201 S. W. 1061; Georgia Casualty Company v. Little, 281 S. W. 1092. The first case mentioned was decided by this court, and a writ of error refused by the Supreme Court. The second case was decided by one of the oldest and most highly respected courts in Texas, the Court of Civil Appeals at Austin, and we indorse the ruling therein that—

"The question of a lump sum payment is * * * addressed largely to the discretion of

the trial court, and in the absence of abuse of such discretion his judgment should be sustained."

Again the court properly held:

"In any event, where a proper discount, reducing future payments to a present value, is made by the trial court, the insurance company is not injured, and should only be heard to complain that proper discount had not been made."

To sustain the ruling the Court of Civil Appeals cited the case of Consolidated Underwriters v. Saxon, 265 S. W. 143, by the Commission of Appeals, which fully sustains it and tends to make the opinion of the Court of Civil Appeals strongly "persuasive." The Commission of Appeals said:

"At any rate, the lump sum is discounted and only its present value is paid when a lump sum is allowed. Hence no hardship is worked on the insurance company or association by such a settlement. Its only contention justly to be made would be that a proper discount had not been made."

The sixth proposition is overruled.

[8] The eighth proposition is overruled. The definition of "total incapacity" as used in the Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309) was not incorrect, and if it had been so the special charge requested by appellant did not add a correct definition. The definition was substantially the same as definitions of the words approved in several cases. Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601; U. S. Fidelity Co. v. Vogel (Tex. Civ. App.) 284 S. W. 650; U. W. Fidelity Co. v. Weir (Tex. Civ. App.) 286 S. W. 565; Employers' Liability Corp. v. Williams (Tex. Civ. App.) 293 S. W. 210. The testimony was so overwhelmingly strong and convincing as to the total permanent incapacity of C. O. Burks to perform manual or other kinds of labor, that if the definition had been incorrect it could not have injured appellant. Not only the doctors placed on the witness stand by appellees, but those who were witnesses for appellant, testified to facts that showed beyond a doubt that electrical wounds were inflicted on C. O. Burks that totally and permanently incapacitated him for labor. This would be apparent to any one who saw a wound which destroyed the skull for a distance of six inches from the front of the head to the back, the wound being two to three inches wide according to a doctor who testified for appellant. It did not require an expert to be able to testify that a man with such a wound and the brain with nothing but thin membrane over it was incapacitated for labor. The evidence did not raise any issue as to partial disability, and the jury by their findings precluded any submission of any hypothetical issue as to partial incapacity. The evidence could leave no doubt in the mind of any unpreju-

diced, impartial person, that the injuries were permanent and totally incapacitated Burks for performance of any work, manual or otherwise.

The judgment will be affirmed.