Mutual Reserve Life Insurance Company v. William Seidel.

Decided November 11, 1908.

1.—Insurance Company—Authority of Agent—Presumption.

In the absence of any provisions in the application for insurance or in the policy itself limiting the power of the soliciting agent in making verbal contracts or agreements with persons seeking insurance, such agents will be presumed to be authorized to make any contract that the company could make.

2.—Principal and Agent—Contract—Fraud of Agent.

The fraud of an authorized agent will invalidate a contract entered into by him on behalf of his principal though in perpetrating the fraud he acted without the knowledge or consent of his principal. This rule applies to an ostensible as well as to an actual agent.

3.—Contract—Rescission—Promise of Future Act—Fraud, when.

It is the general rule that a promise to perform some act in the future will not amount to such fraud as can be made the basis for the rescission of a contract induced thereby. But the rule is otherwise in this State when the promisor, at the time the promise was made and the contract entered into, had no intention to keep or perform the same and the promise was only made to entrap the other party.

4.—Corporation—Deceit of Agent—No Liability.

An action can not be maintained against a corporate body for the deceit or false representations of its agents or officers unless it be shown that the same were authorized by the corporate body.

5.—Contract—Rescission—Conversion—Evidence.

In a suit against an insurance company to recover the amount of a promissory note delivered by the plaintiff to defendant's agent and by him negotiated and the proceeds paid over to the company for the amount of the first premium, evidence considered, and held to require a judgment for the plaintiff on the grounds, first, that the note was obtained by such fraud as would require a rescission of the contract, if any contract was made; secondly, the defendant's contention being that the agent had no authority to make the agreement by which the note was obtained, his acts were binding on no one, and the defend-

ant could not keep the money and profit by his acts; and, thirdly, no contract was in fact consummated, and the defendant was retaining money belonging to plaintiff.

Appeal from the County Court of Goliad County. Tried below before Hon. Gus J. Patton.

*West, Chapman & West* and *Fowler & Fowler,* for appellant.

*G. E. Pope,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee to recover of appellant $282.63 evidenced by a promissory note for $282.63, given by appellee to one Underwood, an agent for appellant, in payment of the first premium on a policy for $10,000, which policy was rejected by appellee when it was tendered to him by appellant. The cause was submitted to the court and judgment rendered in favor of appellee for the amount of his claim.

It was alleged by appellee that he made an application to appellant on one of its printed forms, at the instance and solicitation of its agent, for a policy of insurance for $10,000, and at the same time executed his note payable to the agent in the sum of $282.63 to pay the first premium. It was further alleged that appellee had an agreement with the agent that he would not accept the policy after its issuance unless he so desired, and that he might reject said policy, and that the note was to be held by Underwood, and in case appellee concluded not to accept the policy then the note was to be delivered to appellee and he was not to be bound by the same. It was alleged that a fraud was perpetrated by appellant's agent in obtaining the execution of the note, and that on the day of its execution, before the policy was issued, he had sold the note to the First National Bank of Goliad, which was an innocent purchaser of the same, and that the money realized therefrom was sent to and accepted by appellant.

The testimony of appellee substantiated the allegations of the petition. He did not accept the policy when it was sent to him through the mail, but promptly rejected it and demanded return of the note. He afterwards learned of the negotiation of the note by the agent of appellant.

There is no provision in the application or policy copied into the record that restricts the power of Underwood, the agent of appellant, in the making of verbal agreements with those seeking insurance. The parts copied into the record have reference to other matters, and do not touch upon the powers of the agent. Such being the case Underwood was held out to appellee and the general public as fully authorized to make any contract that appellant could make. The insurance company could no doubt have entered into the agreement charged to the agent, and therefore the question must be considered as though it entered into the agreement with appellee.

There are allegations of fraud upon the part of the agent, and, though they are not as full and explicit as might be desired, in the absence of special exceptions being urged to the allegations they will be considered

sufficient to form the basis for the introduction of evidence. In this connection it may be stated that the fraud of the authorized agent will invalidate a contract entered into by him on behalf of his principal, though in perpetrating the fraud he acted without the knowledge or consent of the principal. (Henderson v. San Antonio & M. G. Ry., 17 Texas, 560; Wright v. Calhoun, 19 Texas, 412; Aultman v. York, 71 Texas, 261; McFarland v. McGill, 16 Texas Civ. App., 298.) This principle applies to the ostensible as well as the actual agent, for, having put an agent in a position where he may perpetrate a fraud upon innocent parties, the principal will not be allowed to profit by such fraud by the claim that he had not authorized the perpetration of the fraud. Appellant in this case having clothed Underwood with authority to solicit and obtain insurance on the lives of persons, is responsible for the fraudulent as well as fair means resorted to by him in the line of his agency. (Mechem, Agency, sec. 743 and note.)

It is the general rule that a promise to perform some act in the future will not amount to fraud in the eyes of the law, and although it may have been the propelling inducement to the execution of the contract, and though it may have been totally disregarded, it could not be made the basis for a rescission. There is, however, an exception to the rule recognized in Texas, in this, that if, at the time the promise is made, it was the design and intention of the party making it to disregard it and no intention to perform it, and it was only made to deceive and entrap the other party, then such promise, in case the refusal to perform took place, would amount to such actual fraud as would justify and authorize the rescission of a contract induced by such promise. (Chicago T. & M. Ry. v. Titterington, 84 Texas, 218; Collinson v. Jefferies, 21 Texas Civ. App., 653; O'Brien v. Camp, 46 Texas Civ. App., 12.)

Now if this be an action of deceit, and not to rescind the contract, the action could not be maintained against appellant unless it was impliedly authorized by it, for an incorporated body can not, it is stated, be held for false representations even of its directors, unless it authorized such representations. (Houston & T. C. Ry. v. McKinney, 55 Texas, 176. In this case, while there is no direct prayer for rescission, the effect of granting the relief sought by appellee is to destroy the contract of insurance and render it null and void. It is to all intents and purposes a suit to rescind the insurance contract and return the premium paid by appellee.

The facts in this case indicate clearly that the promise to hold the note was made by Underwood with no intention to hold it, but that it was made with the deliberate intention to mislead appellee and entice him into giving a note which Underwood intended at the time to negotiate and place in the hands of an innocent purchaser. This is borne out by the fact that he sold the note at once and disappeared, and nothing could be definitely ascertained as to what became of him.

This case may be viewed from another standpoint, namely: If the agent, Underwood, acted, as claimed by appellant, in excess of his authority in entering into the agreement that he did with appellee, then his acts in excess of his authority without the knowledge or consent of his principal rendered the contract nugatory, and neither party could obtain any advantage, and appellant should be compelled to return the

money to appellee which it has unauthorizedly obtained from him. It should not repudiate the acts of its agent and still profit by those acts. (Mutual Life Ins. Co. v. Hargus (Texas Civ. App.), 99 S. W., 580.)

Again, if the evidence of appellee is true, and there was no effort to controvert it, no contract was ever entered into between him and appellant. He merely placed his promissory note in the hands of the agent to be held until the policy was returned, and then the contract was to be consummated if appellee so desired. He held the power in his own hands to execute the contract, and without such necessary action on his part no contract ever existed, and appellant is unlawfully retaining money belonging to appellee.

The judgment is affirmed.

*Affirmed.*