MID–CONTINENT LIFE INS. CO. et al. v. PENDLETON et ux. (No. 5999.)

(Court of Civil Appeals of Texas. San Antonio. April 3, 1918.)

1. FRAUD &#9758;4 — REPRESENTATIONS — PROMISES—INTENT—PLEADING.

Representations by vendor that he would put water on land within 60 days will not amount to fraud, unless it is alleged and proved that he had no intent to perform at the time of making them.

2. FRAUD &#9758;13(2)—REPRESENTATION OF FACT —RESCISSION.

Representations of a vendor as to an existing fact may be basis for relief, although believed by him to be true.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by C. D. Pendleton and wife against the Mid-Continent Life Insurance Company and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Rentfro & Cole, James B. Wells, and Harbert Davenport, all of Brownsville, and Blakeney & Maxey, of Tulsa, Okl., for appellants. J. T. Canales and R. B. Creager, both of Brownsville, W. P. Thompson, of Vinita, and R. E. Green, of Brownsville, for appellees.

FLY, C. J. This is a suit for damages instituted by appellee Sally G. Pendleton, joined pro forma by her husband, C. D. Pendleton, alleged to have accrued through false representations made by King and Lee, appellants, to induce her to purchase 80 acres of land from the insurance company, for the sum of $150 an acre. H. C. King was the president of the insurance company, and Thomas F. Lee its agent for sale of its real estate. The original suit was not only for damages, but also contained a count asking for a rescission of the contract of purchase. On the action of rescission several parties were interpleaded by appellants, but upon the abandonment of that action by appellees they were dismissed from the suit. The cause was tried by jury, resulting in a verdict in favor of appellees for $10,000, and judgment was rendered thereon canceling vendor lien notes executed by appellees in the sum of $8,000, and in favor of appellee for $2,000.

The first seven assignments of error are grouped, and all assail the sufficiency of the evidence to sustain the verdict, and necessarily require a review of the facts. Appellees resided in Muskogee, Okl., prior to June 1, 1914, since which time they have resided at or near Harlingen, Tex. The home office in 1914 of the appellant insurance company was in Muskogee, and H. C. King was its president and Thomas F. Lee its land agent. Appellees became acquainted with Lee in January, 1914. Mrs. Pendleton was the contracting party and active agency of appellees in the purchase of the land; in fact, the husband had no lot nor parcel in the transaction and appears in the suit only to legalize and sustain the wife's suit in the line of necessary parties. Mrs. Pendleton stated:

"I certainly would not have entered into any agreement with him (Lee) to buy dry land, there was no value in the land except from the irrigation."

But she also stated that she went to look at the land before she bought it, and knew there was no water on it or near it and that there were no canals on or near it. She said:

"When I looked at it on the ground the first time, I of course saw no canal on it. The land was still in the brush."

Again she testified:

"From my knowledge of the country now, the map depicted the country with substantial

---

accuracy. In other words, they showed the relative distance from the river to the arroyo; showed seven miles from the river to the arroyo, or nine, I understood at the time. I understood at the time that the pumping plant was on the river, but that the water had been brought to the arroyo. I was told at the time that before my land could be irrigated it would be necessary to flume the arroyo and build a canal about two miles long."

The river referred to is the Rio Grande, and the arroyo is a creek or drain. Mrs. Pendleton, in her testimony, showed clearly that she did not and could not rely on any representations as to the land being irrigated at the time she bought it, for she stated:

"When I examined it upon the ground, I was told that the water was in the canal across the arroyo about two miles away, and that before the water could be put on my land it would be necessary to flume the arroyo and build a canal from the arroyo to my land. Those statements themselves were certainly true. The only representations at that time that I am complaining of that injured me was that Mr. Lee told me, when I raised the point about when the water would be there, that it would be there *in 60 days, and it is not there yet.* That's the injury that I am complaining about. So far as I know, that is really the only representation made to me up to that time that misled me or caused me to act differently than I would have acted."

She reiterated this statement that the only representations that she relied on for a recovery was the statement of Lee that the water would be on the land in 60 days, and the only issues in the case are narrowed down to the one issue as to whether a recovery can be based on that declaration made by Lee. In fact, the contention that representations were made that the land was irrigated is utterly irreconcilable with the contention that appellants promised to put canals and water on the land in 60 days. One or the other must fall to the ground, and Mrs. Pendleton has chosen to pitch the prosecution of her claim for damages on the representations that the water would be supplied in 60 days. To that point alone will the opinion of this court be directed.

[1] The representations of Lee, giving them their widest scope, amounted to a promise to perform a certain act in the future, that is, *put water on the land,* about which Mrs. Pendleton was negotiating, within 60 days, and it is the general rule that a promise to perform an act in the future will not amount to fraud in the eyes of the law, although it may have been the propelling inducement to the execution of the contract, and, though it may, have been totally disregarded, still it cannot be made the basis of a suit to avoid a contract. Lemmon v. Hanley, 28 Tex. 219; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Moore v. Cross, 87 Tex. 557, 24 S. W. 1051. There is, however, a recognized exception to the rule in Texas that if, at the time the promise was made, it was the intention of the party making it to disregard it, and that he had no intention at the time of making it to perform it, but made it to deceive and defraud the other party, there would be a basis for a suit founded on fraud and deception. Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Railway v. Smith, 98 Tex. 553, 86 S. W. 322; Insurance Co. v. Seidel, 52 Tex. Civ. App. 278, 113 S. W. 945; May v. Cearley, 138 S. W. 165; Chambers v. Wyatt, 151 S. W. 864.

There was no allegation, and consequently no proof, that there was a fraudulent intention at the time the representation was made to disregard it. The suit, as it comes before this court, is not for rescission, but one for damages alleged to have accrued from a failure to perform certain acts in the future, that of placing water on the land in 60 days, and if such promise was made there is nothing in the record to show that it was in regard to an existing fact, but that it was at most, if that much, a promise to do certain things in the future.

This case must be considered on the theory that, when the promise was made or opinion given that water would be put on the land in 60 days, appellants intended to fulfill the promise, or believed that it would be put there by another party, because no other case is alleged or sustained by proof. The allegations as to the representation were:

"That any of said land that might be purchased by plaintiffs would be actually supplied with water for irrigation within 60 days after such purchase."

It was further alleged:

"That such representations were fraudulently made by the defendants with such knowledge of their falsity, for the purposes of persuading plaintiffs to purchase said land from them, at a price greatly in excess of the actual value thereof."

Mrs. Pendleton testified:

"I don't know that I discussed with them on the ground the difficulty of getting water, and when I would get it, but I discussed it before I left Harlingen that evening. I called Mr. Lee's attention to the fact and asked him where the canals were on my land, and he said they didn't tie up their money in canals until the land was sold, but they would be put through there within 60 days after the land was sold. That was really the only time prior to my purchase of the land that I discussed with anybody when the canals would be built. Before I purchased the land, the only discussion I had with anybody about when the canals were to be constructed was with Mr. Lee, and was at that time."

That representation was afterwards enlarged as follows:

"The particular representation of which I complain is that Mr. Lee told me, when I examined the land on the ground, that the canals would be built and the water would be there within 60 days, and the 60 days passed and the canals were not there, and the water is still not there. The canals, however, are there now and have been there for over a year, and they haven't been able to put any water into them yet."

Appellant did not own any irrigating plant, and Lee swore that he so informed Mrs. Pendleton, and also told her that Lon C. Hill, Jr., had a movement on foot to make an irrigation district out of the Harlingen

community, in which the land was situated which she desired to purchase. He said he told her only what Hill had told him, and gave it as his opinion that the district would be formed. Lee admitted that he told Mrs. Pendleton that he thought 60 to 90 days would be sufficient time in which to furnish water for the land. He testified that he had no reason to doubt the ability of the Harlingen Land & Water Company to furnish the water in the time mentioned by him. He denied that he ever told Mrs. Pendleton that appellant would put the water on the land, but informed her who would put it there. Mrs. Pendleton did not swear that Lee told her that the owners of the land would put the water on the land. She knew that Hill owned the irrigation plant, for she testified that Hill said: "That they had never failed to furnish water to anybody that had asked for it." Mrs. Pendleton closed her testimony as to the representations as follows:

"The representation made that I now say in the light of further experience is untrue is that Mr. Lee told me that the canals would be built in 60 days, and as a matter of fact they are still not in condition to supply me with water."

Mrs. Pendleton, on June 9, 1914, about three months after she bought the land, wrote a letter in which she showed that she knew that the insurance company did not furnish water, because she stated that she had taken up the question "in regard to water company not getting water on my land." The insurance company had bought from Lon C. Hill, Jr., to whom the land had been conveyed by the Harlingen Land & Water Company, and in the deed to Hill was the following provision:

"The agreements, covenants, and stipulations here made by the parties hereto, and the obligations of said company to fully complete and properly equip the main canals over the said land so as to properly irrigate same, and the payments herein provided for, being parts of the purchase price for said land and running with the land being binding upon grantee, and all persons claiming by, through or under him, except that liability for payment for construction, equipment of main canals to and across said land, shall not be binding upon the grantee or his subsequent vendee of said Lon C. Hill, Jr."

The covenants in that deed were included in the deed by Hill to the insurance company. The deed made by the insurance company to Mrs. Pendleton contained only the usual covenants and made no reference whatever to canals or water. Mrs. Pendleton was notified by the recitations in deeds forming her chain of title that no one but the water company was bound to furnish water for her land, and she must have known that Lee only expressed an opinion when he told her canals would be placed on the land in 60 days. If, however, it was a promise to furnish the water, it was to be performed in the future, and, as said by the Supreme Court in Railway v. Titterington, herein cited:

"We concede that ordinarily a promise to perform some act in the future, although made by one party as a representation to induce the other to enter into the contract, will not amount to fraud in legal acceptation, though subsequently the promise is, without any excuse, entirely broken, and nonfulfilled. This is a plain and well-established rule about which there can be no controversy; otherwise, every breach of a contract would amount to fraud."

Appellants did not commit themselves by the written contract to the proposition that water would be furnished. They furnished Mrs. Pendleton with an abstract of title and expressed the opinion that the water would be furnished to her. There is nothing to show that the opinion was not given in good faith. Zavala Land Co. v. Tolbert, 165 S. W. 28; Luckenbach v. Thomas, 166 S. W. 99.

If a promise to furnish the water in a certain time was made with no intention to perform it, but merely to deceive, under proper pleadings and sufficient evidence, it might form the basis for equitable relief; but as said by this court in Beaumont Carriage Co. v. Price, 104 S. W. 499:

"It is clearly not enough to prove the nonperformance, and it will not do to say that from the bare fact of nonperformance it could be inferred that the intent not to perform originally existed, because, if this were allowed, any contemporaneous agreement could be attached to a writing by parol, and the rule of law on this subject would be useless."

This subject is fully discussed in Ruling Case Law No. 12, §§ 21–26, pp. 254–259, and many authorities are cited in footnotes which sustain the propositions of law herein contained. As said in the text cited (section 21):

"A representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made. The failure to make it good is merely a breach of contract which must be enforced in an action on the contract, if at all."

Again it is said in section 25 of the textbook:

"False representations by a vendor of land of his intention to make improvements which will benefit the property sold are ground for rescinding the contract of sale, and a good defense to a suit for its specific performance. * * * To have that effect, however, it is generally held that the vendor must have had no such intention at the time the statement was made; there being no right to rescind if the statement was made in good faith, even though intention is not carried out."

[2] The cases cited by appellees are not in point under the facts in this case. Some of them show promises made to deceive, and others representations as to existing facts. Of course, a representation as to an existing fact could become the basis for relief, even though the person making the representation believed it to be true. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Piano Co. v. Gibbon, 180 S. W. 1185; White v. Peters, 185 S. W. 659.

In the case of Davis v. Driscoll, 54 S. W. 43, decided by this court and cited by appellees, it was held:

"It is also contended that the representations were mere promises to perform some act in the future, and would not, therefore, constitute fraud. The record shows, however, that appellant made the representation that he had certain appliances by which he could remedy evils resulting from an influx of quicksand into the wells, coupled with the assurance that he would put them into the wells if the contract was executed. There was evidence to the effect that he did not have such appliances. The representation was as to a fact, and it was untrue, and appellees were deceived thereby."

It is clear that case does not fit this case. So it is with the others cited on the same subject.

The requested charge copied into the eighth assignment embodied the law as herein enunciated, and should have been given.

The ninth assignment of error is overruled. The facts show that Lee was authorized to make the representations made by him, and such representations were not repudiated by his principal when made known to it.

The tenth and eleventh assignments are overruled.

The twelfth assignment was the law of the case and should have been given.

The thirteenth assignment of error is overruled.

None of the misrepresentations alleged had any testimony to support them, except as to the water being placed on the land, and they should not have been submitted to the jury. The fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, and twenty-second assignments of error are sustained.

The remaining assignments of error are overruled.

The judgment is reversed, and the cause remanded.