LOTT TOWN & IMPROVEMENT CO. v.
HARPER et al. (No. 6050.)

(Court of Civil Appeals of Texas. San Antonio.
May 29, 1918. Rehearing Denied
June 19, 1918.)

1. FRAUD ⊜⟶42, 46 — PLEADING — SUFFI-
CIENCY.
In an action on notes given for price of land,
cross-bill, alleging that the notes were given in
payment for land on condition and under repre-
sentations of plaintiff that the land would be
irrigated adequately, and that the irrigation was
not adequate, and further setting up the meas-
ure of damages, was demurrable for failure to
allege that defendants were induced to enter the
contract by the misrepresentations or to allege
that plaintiff did not intend to irrigate.

2. FRAUD ⊜⟶12—PROMISES OF FUTURE PER-
FORMANCE.
Promises to perform an act in the future
will not generally constitute fraud, although the
propelling inducement to the execution of a con-
tract, unless the promisor, when making the
promise, intended not to perform it, and made it
to defraud and deceive.

3. FRAUD ⊜⟶59(3)—DAMAGES—MEASURE.
The measure of damages for fraud in mis-
representing lands sold is the difference between
the contract price and the actual value at the
time of contracting.

4. FRAUDS, STATUTE OF ⊜⟶44(1) — PAROL
PROMISE.
A parol promise of the vendor to have the
land irrigated, which could not have been per-
formed within one year, was in violation of the
statute of frauds (Vernon's Sayles' Ann. Civ.
St. 1914, art. 3965).

Appeal from District Court, Hidalgo Coun-
ty; V. W. Taylor, Judge.

Action by the Lott Town & Improvement
Company against Corilla J. Harper and
another. Judgment for plaintiff in part, and
it appeals. Reversed, reformed, and ren-
dered.

John P. Gause, of Mercedes, and R. J.
McMillan, of San Antonio, for appellant.
Dawson & Anderson, of Corpus Christi, and
Fred E. Bennett, of Mercedes, for appellees.

SWEARINGEN, J. Appellant, the Lott
Town & Improvement Company brought this
suit against appellees, Corilla and Ruth Har-
per, to recover the amount of a note for $7,-
642.60, made April 8, 1910, together with in-
terest and attorneys' fees less credits indors-
ed upon the note, and to foreclose the lien
of the vendor, expressly retained by recitals
in the deed. The amount of the note and the
lien were admitted by appellees, but they al-
leged a cross-action for damages caused them
by the deceit of appellant. Special issues
were submitted to the jury. Judgment was
rendered in favor of appellant for $2,873.07,
which sum the judgment states is the differ-
ence between the amount due on the note,
including attorneys' fees, and the amount of
damages appellees suffered by the deceit.
The petition alleged a cause of action upon
the note and for foreclosure of lien. The
answer, as stated, admitted the appellant's
cause of action; but set up a cross-action for

deceit against appellant and against several
individuals and corporations, each of whom,
it was prayed in the cross-bill, should be
served with citation. But no citations were
ever issued and none of the impleaded parties
appeared, hence appellees' suit upon the cross-
action is limited to appellant.

[1] The cross-bill fails to state a cause of
action, could not be maintained against a
general demurrer, and its consideration by
the court may be fundamental error, as will
appear from the following abbreviation of it:
Paragraph 1 admits appellant's alleged cause
of action. Paragraph 2 qualifies the admis-
sion by adding:

"Note sued upon was executed as a part pay-
ment of the purchase price for said land, but up-
on the conditions and with the covenants here-
inafter more fully set forth."

Paragraph 3, with much detail, avers the
efforts of appellants and their grantors to
secure by contract, with others, the establish-
ment of an adequate irrigation system, which
efforts and contracts, it is alleged entitled
appellees to sufficient water to irrigate their
lands. Paragraph 4, of the cross-bill alleges
that appellant represented itself to be the
owner of the land sold to appellees at the
time the sale was made. The purpose of
the fifth paragraph was to allege the deceit
which is the foundation for this cross-bill.
Said paragraph is, in substance: That at
the time of executing and delivering said
deed plaintiff (appellant) represented to the
defendants (appellees) that said land would
be irrigated by a canal system with adequate
facilities for the proper irrigation of such
lands for agricultural purposes, plaintiff re-
presenting to these defendants that said canal
system would be permanent, thereby main-
taining said lands as irrigated lands and at
irrigated values. The sixth paragraph avers
that appellant caused the La Donna Canal
Company to execute and deliver to appellees
a contract to irrigate their lands, and that
said representations, covenants, agreements,
and undertakings on the part of appellant
was a part of the consideration of said con-
tract of sale and was a part of the considera-
tion for the execution by the appellees of
said note. The seventh paragraph sets out
that the measure of damages is the difference
between the actual value of the land without
irrigation, $10 an acre, and what its value
would have been if adequately irrigated, $250
an acre. In the eighth, ninth, tenth, and
eleventh paragraphs it is alleged that the
La Donna Canal Company entered into a
contract to furnish the irrigation, for execut-
ing which contract it was to receive $10 an
acre for each acre agreed to be irrigated;
that appellant became obligated to these ap-
pellees to adequately irrigate their land;
and that neither the appellant nor the La
Donna Canal Company built an adequate
irrigation system The Twelfth paragraph is
that, by the breach of the contracts to ir-

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

rigate appellees' land, appellant has damaged appellees in the sum of $60,000, which amount, it is alleged is the difference between the value of the land without irrigation and what it would be if irrigated as represented.

The facts are: The appellees came on an excursion train in February, 1910, to investigate the lands offered for sale by appellant. They inspected the land and saw the canals. The canals did not look very promising to Corilla J. Harper, and, as she had been warned to inquire about the irrigation facilities, she told Mr. Scobey, the sales manager for appellant, that the canals did not impress her favorably. He replied that it was a new enterprise, just being installed, but said he would guarantee that the water supply would be sufficient. He explained to her that a canal company would give her its contract to furnish the water. Shortly thereafter, Corilla J. and Ruth Harper, through their agent, executed a contract to buy the land from appellant and to receive the water contract from the La Donna Canal Company, and paid $1,500 cash as earnest money. Subsequently the deed, two notes for like amounts, and the first cash payment were all made and the trade closed. Neither the deed nor notes mention irrigation or canal systems. One of the notes was paid when due. Interest and part of the face of the second note were later paid. The contract price for the land was $95 an acre for some of the lots and $90 an acre for the rest. The aggregate acreage purchased was 250.16 acres, and the aggregate contract price was $22,927.80.

The jury found, in answer to the sixth special issue, that the value of the land at the time of purchase by appellees, with the irrigation facilities as they actually were, was $150 an acre, or $37,524 for the 250.16 acres of land.

The evidence discloses further that at times La Donna Canal Company furnished ample water, but at times failed because the canals became choked with silt and water grass, and because of lack of fuel for their engines and because of breakdowns in the pumping machinery. This continued until a district irrigation system was organized and took over the equipment and obligations of the La Donna Canal Company in 1915, after which no further complaint is made of insufficient irrigation facilities.

The first assignment complains that the court refused to peremptorily instruct the jury to return a verdict for the full amount of the principal, interest, less credits indorsed on the note, and attorneys' fees remaining due on the note sued upon and for foreclosure of the vendor's lien sued for; and against the appellees, in favor of appellant, on appellees' cross-action.

This assignment must be sustained. Appellant's cause was admitted. The cross-bill fails to allege a cause of action. The contract represented by the deed and notes was performed by both parties. Appellees do not sue for a breach of that contract. But appellees in their cross-action sue to recover damages for fraudulent representation. There is no allegation that appellees were induced to enter into the contract by reason of any misrepresentation by appellant. This ommission is fatal. 8 Enc. Dig. 370, E, 1; 12 R. C. L. 422, § 168.

[2] Then again the alleged representations of appellant's agent, Mr. Scobey, as stated in the case of Mid-Continent Life Insurance Co. v. Pendleton, infra, "giving them their widest scope, amounted to a promise to perform certain acts in the future"; that is, furnish water for irrigating appellees' land in the future.

"It is the general rule that a promise to perform an act in the future will not amount to fraud in the eyes of the law, although it may have been the propelling inducement to the execution of the contract, and, though it may have been totally disregarded, still it cannot be made the basis of a suit to avoid a contract." Lemmon v. Hanley, 28 Tex. 219; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051; Mid-Continent Life Ins. Co. v. Pendleton, 202 S. W. 769.

There is no averment in the cross-bill that appellant had no intention at the time of making the representation of having the lands furnished with water for irrigation; on the contrary, the cross-bill alleges, in detail, the efforts and steps taken by appellant to secure an adequate supply of water to these lands. Therefore the cross-bill fails to bring this case within the exception to the above-stated general rule, which exception is thus stated by Chief Justice Fly:

"There is, however, a recognized exception to the rule in Texas that if at the time the promise was made it was the intention of the party making it to disregard it, and that he had no intention at the time of making it to perform it, but made it to deceive and defraud the other party, there would be a basis for a suit founded on fraud and deception. Railway v. Titterington, 84 Tex. 218 [19 S. W. 472, 31 Am. St. Rep. 39]; Railway v. Smith, 98 Tex. 553 [86 S. W. 322]; Ins. Co. v. Seidel, 52 Tex. Civ. App. 278, 113 S. W. 945; May v. Cearley, 138 S. W. 165; Chambers v. Wyatt, 151 S. W. 864." Mid-Continent Life Ins. Co. et al. v. Pendleton, above cited.

The first assignment is sustained.

The second assignment assails the judgment for want of evidence to support it.

[3] The judgment rendered is contrary to the law and facts in this: The measure of damage in this cross-action by appellees is the excess of the contract price agreed to be paid because of the representations, over the value of the land as it actually was at the time the contract was made. George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456. The jury found, upon sufficient evidence, that the land was worth $150 an acre, or $37,524, with the canal system and available supply of water as they really were at the time appellees made the contract. The contract price, it is admitted, was $22,927.80. The facts therefore show that there was no excess of contract price over the actual val-

ue and that no damage to appellees was proven.

The second assignment is sustained.

[4] The third assignment correctly urges that the court erred in overruling appellant's special exception to the effect that the parol promise to have the land furnished with water for irrigation was in violation of the statute of frauds, inasmuch as it appears from the cross-bill that the promise could not have been performed within one year. V. S. R. C. St. art. 3965; Stovall v. Gardner, 100 Tex. 25, 94 S. W. 218; Light Pub. Co. v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867.

We sustain the third assignment.

The fourth assignment complains of the admission of testimony that was clearly irrelevant and prejudicial. We do not deem it necessary to further discuss this assignment, but sustain it.

The fifth assignment complains of the court's order overruling appellant's motion to set aside the jury's answer to the first special issue for want of evidence to support it.

We sustain the fifth assignment.

The sixth assignment is overruled because the testimony objected to was admissible to prove the alleged false representations.

The seventh assignment is sustained for the reason that the testimony admitted over objection was wholly irrelevant.

The eighth assignment is sustained for the reasons given in our consideration of the first and second assignments.

The judgment of the trial court is reversed, reformed and here rendered for appellant for the amount of the note, including principal and interest, less credits indorsed on the note as of the dates stated, and for attorney's fee. The total amount to be ascertained as of October 1, 1917, together with interest at the rate of 6 per cent. per annum until paid, and for foreclosure of the vendor's lien, for writ of possession, and for all costs.

Reversed, reformed, and rendered.