**KEETON PACKING COMPANY et al.,**
**Appellants,**

v.

**STATE of Texas et al., Appellees.**

**No. 7870.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 4, 1968.

Rehearing Denied Dec. 16, 1968.

Crenshaw, Dupree & Milam, and Cecil C. Kuhne, Lubbock, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Exec. Asst. Atty. Gen., Watson C. Arnold and Albert L. Derden, Asst. Attys. Gen., Austin, Fred O. Senter, Jr., City Atty., Kenneth Jones and George A. Staples, Jr., Asst. City Attys., Lubbock, for appellees.

CHAPMAN, Justice.

This is in lieu of our opinion announced on September 23, 1968.

This is an appeal by Keeton Packing Company et al., hereinafter called Keeton, from a judgment summarily rendered that it take nothing in a suit against the State of Texas and the State Highway Department of the State of Texas. Consent was granted Keeton by the Texas Legislature for filing the suit against the State and the State Highway Commission of the State of Texas in HCR 23, General and Special Laws of Texas, 57th Legislature, 3rd called session, pp. 238–239, approved February 16, 1962.

■ In summary proceedings such as here the burden of proof is on the movant and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion for summary judgment should not be granted. All conflicts in evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Great American Reserve Insurance Co. v. San Antonio Plumbing Co., 391 S.W.2d 41 (Tex.Sup., 1965).

Applying these summary judgment rules, the record shows that shortly before April 6, 1951, Al O'Brien approached Claude Keeton, president of Keeton Packing Company and represented to him that he was the county right-of-way agent then working for and acquiring titles to land for the State of Texas and the State Highway Commission of the State of Texas for the

proposed route for Highway 82 and 62 [1], extending East 4th Street in the City of Lubbock to tie in with Highway 82 to Idalou. Keeton owned land on both sides of the proposed route for the highway. Mr. O'Brien represented to Mr. Keeton that it would be beneficial to the balance of the land on both sides of the proposed highway if he would deed the property to the State; that the highway was planned, laid out, surveyed and fully mapped so the State would acquire all tracts of land running from the Keeton property both east and west along the section line and 4th Street; that the State was attempting to acquire donative deeds all along the section line (on each side of which Keeton owned property); that other tracts of land along said section line would be acquired both east and west until the State had acquired enough land to connect East 4th Street with then existing Highway 82; *and that the State would actually construct what it had proposed as a highway along the route that it had represented it would be constructed.* (All emphases added.)

*Based on the representations by O'Brien that the State would actually construct a highway as represented and in consideration of the benefits which it was represented would accrue to adjacent land by virtue of such construction,* Keeton executed a deed conveying the 5.021 acres requested by the State for the proposed highway.

Though the deed recites a consideration of $1.00, it is stipulated that neither that sum, nor any sum was paid for the execution of the deed. Keeton's affidavit at least raises a fact issue to the effect that the deed was executed solely upon O'Brien's representations that the highway would be constructed as he represented and in consideration of the benefits which would accrue to Keeton Packing Company by enhanced value to its adjacent land as a result of such construction.

Shortly after the execution of the Keeton deed the State Highway Commission abandoned the proposed route for the highway and neither before nor afterwards did it or the State of Texas acquire any other tracts along the route O'Brien represented the highway would be constructed. The highway was later constructed in a more northerly direction and the only portion of the Keeton land used was 1.191 acres along the extreme west edge of the conveyed strip. It did not proceed east along Keeton's land so as to enhance the value of adjacent lands owned by Keeton, as O'Brien stated in order to secure the deed.

At such time the subject property was not within the city limits of the City of Lubbock. It was later incorporated but the City has paved very little of the street and only a few hundred yards east down East 4th Street there is only a 40-foot wide graded county road, without pavement just as it existed in 1951.

Shortly after HCR 23 became effective Keeton sued the State of Texas and its highway commission, pleading that the 1.191 acres used by the highway commission be quieted in the State of Texas and that by declaratory judgment the remainder of the total conveyed be relinquished and conveyed, that pursuant to Art. 6673a, Revised Civil Statutes of Texas plaintiff is the only proper one to receive such property and such declaratory judgment should order defendant by and through the office of the Attorney General of the State of Texas and the Governor of the State of Texas to comply with the steps it alleged were ministerial in effecting such conveyance. It alleged in the alternative that if such steps are discretionary (the State of Texas and its highway commission having admitted it has no use for the remainder of the property conveyed nor any plan nor future need therefor) then the refusal of the State Highway Commission to officially act on such undisputed facts because its district engineer wishes to accommodate the City of Lubbock, amounts to an arbitrary, capricious and unreasonable exercise

---

1. The record shows the proposed highway was to have both the numbers 82 and 62.

of discretion. Keeton also alleged in the alternative that the property was taken by the State of Texas for public use without compensation to the owner in violation of the Constitution of Texas, in the amount of $40,000.00 damages.

The City of Lubbock filed an intervention in the suit, complaining against the State of Texas and Keeton. The latter filed a motion to strike such intervention, which was overruled, and on January 2, 1968, the summary judgment was rendered that plaintiffs take nothing.

It is undisputed that the highway as it was finally constructed was adjacent to only the extreme west end of Keeton's property, that the portion conveyed was approximately 200 feet wide, and that the only conveyed portion it used in connection with the highway is 1.191 acres for the interchange of Quirt Street and U. S. Highway 82.

Before discussing other questions raised by appellant, we are faced with appellees'

contentions to the effect that the Easley case[2] forecloses, under the record here, any right of Keeton to recover its title to the subject property. As we read the Easley case, the real thrust of the opinion is the holding to the effect that the portions of Articles 6674q–9 and 6673a relied on respectively by Easley and the State[3] are in such irreconcilable conflict that both cannot stand and Art. 6673a being the last expression of the Legislature on the subject, is the controlling provision.

In the process of deciding the question before it the Supreme Court of Texas held under the facts in that case that before the State's title to the land could be transferred out of the State "* * * four things under Art. 6673a are necessary: (1) The State Highway Commission must determine that the property theretofore acquired for highway purposes is no longer needed for such purposes; (2) the Commission must recommend to the Governor that the land be sold, advising as to the fair and reasonable value of the land or interest

---

2. The State of Texas v. Easley, 404 S.W. 2d 296 (Tex.Sup.1966).

3. To divest title to the land sued for herein, Easley relied on that portion of Art. 6674q–9 reading as follows:
 "'* * * provided that when the right-of-way, or any part thereof, pertaining either to a State Highway or a lateral road, has been abandoned because of the abandonment of such road for all public purposes, and such right-of-way, or any part thereof, was donated by the owner of the land for right-of-way purposes, then, and in that event, the title to the said right-of-way shall vest in said owner, his heirs or assigns * * *.'"
 The State on the other hand contended 6674q–9 was not applicable but that its case was controlled by Art. 6673a. As affecting the problem then before the court that statute provides:
 "'Section 1. Whenever the State Highway Commission determines that any real property, or interest therein, heretofore or hereafter acquired by the State for highway purposes, is no longer needed for such purposes, and in the case of highway right-of-way it has further determined that such right-of-way

is no longer needed for use of citizens as a road, the State Highway Commission may recommend to the Governor that such land or interest therein be sold, and the Governor may execute a proper deed conveying all the State's rights, title and interest in such land.'"
The Highway Commission has "'the duty * * * to determine the fair and reasonable value of the State's interest in such land and to advise the Governor thereof.'" * * *
"'Provided further, that *upon recommendation of the State Highway Commission* the Governor may execute a proper deed relinquishing and conveying the State's right, title and interest in such real property as follows:
 "'(a) If title to the State was acquired by donation, convey to the grantor, his heirs or assigns * * *.'"
(Emphasis added).

Sec. 5 of Art. 6673a provides: "'The Attorney General shall approve all transfers and conveyances under this Act, *and in no event* shall the right of the State of Texas to full and exclusive right of possession of all retained rights-of-way be *infringed or lessened in any manner thereby. * * *'*"

therein; (3) the Governor must execute a proper deed conveying the State's right, title and interest in the land; and (4) the Attorney General shall approve all transfers and conveyances under this Act."

A study of the facts in Easley reveal important distinguishing features in that case and ours, one of which was that the claim to the property by the grantor's successors was for land donated for a highway, used for that purpose, then abandoned and of no further use. In our case there was no claim for any land which had been used at anytime for the exclusive purpose granted. Keeton asked that the property used by the State and its highway commission be quieted in the State. It sought recovery only of that not used for the purpose deeded and upon which the consideration failed. The Court of Civil Appeals in Easley held the two statutes para materia, with which the Supreme Court did not agree. Additionally, the deed was an outright gift, 390 S.W.2d 24, while there is evidence here raising the question of fact as to whether the Keeton deed was executed in consideration of enhanced value of other land then owned by Keeton adjacent to the deeded property.

The Supreme Court of Texas interpreted Art. 6673a exactly as it is written with respect to the four conditions necessary to be present before the State's interest acquired for highway purposes may be transferred out of the State, but neither that article nor the Supreme Court opinion proposes to preclude recovery by other legal means of property deeded for a specific purpose under a consideration that has failed, then not used for the purpose deeded and for all practical purposes released to a municipal corporation with the power of eminent domain in order that it could acquire such property without the expense attendant upon eminent domain proceedings. Additionally, the court did not pass upon questions of discretion of the highway commission.

 The question here is whether the State of Texas needs the property for state highway purposes. The summary judgment evidence at least raises a question that it does not. The responsibility then rests upon the State Highway Commission as to the disposition of the property. The court in Easley said: " * * * a better working system will result for the Commission to be the agency to determine when rights-of-way no longer needed may be disposed of and to make recommendations to the Governor as to his executing deeds conveying the same." We cannot believe the court in Easley, as urged by appellees, granted the State Highway Commission authoritarian powers with respect to disposition of property acquired exclusively for its highway purposes and then not used. Such a holding would have to presume constant proper conduct of those with the responsibilities of decision assigned to the State Highway Commission by Art. 6673a unless justice is to be a mockery. Such a presumption is too violent to assume for human conduct. If Keeton's affidavit is true the only proper decision, after the highway commission had determined it had no further use for the property, would have been to recommend to the governor that the property not used be transferred back to the grantor. Instead, permission to sue for recovery had to be obtained by Keeton from the legislature, and suit filed. After suit was filed counsel for the State of Texas, as shown by "Exhibit A" to City of Lubbock's Petition in Intervention, suggested to counsel for the city that it might want to intervene "in the hopes that the city might be able to retain title to the right-of-way under the state's deed." The state contends this evidence is not admissible under Art. 4411, V.A.T.S.[4] Assuming, without holding, that part of the letter in which counsel stated: "Since the convey-

---

4. Art. 4411 "No admission, agreement or waiver, made by the Attorney General, in any action or suit in which the State is a party, shall prejudice the rights of the State."

ance constituted a gift on the part of Mr. Keeton, it is our opinion that the purpose for the conveyance constituted the consideration and inasmuch as the land was not used for the purpose conveyed, the consideration in the deed failed" may be subject to the stated article, it still must be said that the suggestion that the city intervene is neither an admission, agreement nor waiver and does not come within Art. 4411.

There seems to be a conflict in the intermediate appellate courts with respect to the immunity the state enjoys under Art. 4411. The article was passed under Acts 1846 and shows no amendment. One of our Courts of Civil Appeals has said: "When the State authorizes a party to sue the State and becomes a party to that litigation, it occupies the same position as any other litigant." State v. Stanolind Oil & Gas Co., Tex.Civ.App., 190 S.W.2d 510 (1945). The Austin Intermediate Appellate Court in Producers Oil Co. v. State, 213 S.W. 349 (Tex.Civ.App.—1919) said: " * * * by the same rules of evidence and rules of procedure the state is bound, just as any other citizen. It has no special immunities and privileges when litigating with the citizen." The Galveston Intermediate Court in Sherman v. Cage, Tex. Civ.App., 279 S.W. 508 (1925) stated: "The same rules of pleading and procedure must be applied to the state and the Attorney General as are applied to other litigants and attorneys, * * *" On the other hand the Austin Intermediate Court in Harrington v. State, 385 S.W.2d 411 (1965, n. w. h.) held that the Attorney General is prohibited from making any admission, agreement or waiver in a suit to which the state is a party which shall prejudice the rights of the state." In any event, at least part of the evidence is in the case from other sources.

▆ In order that the authority of the State Highway Commission (where the property has been acquired by the State of Texas upon a positive statement that the highway would be constructed alongside grantor's property) may be clearly determined by the Supreme Court, if a writ should be granted, we hold requirement "(1)" of the four steps is the only one requiring discretion under the facts of our case and that the other three are ministerial. We do not believe the legislature's use in paragraph one of Art. 6673a of the phrase "that such right-of-way is no longer needed for use of citizens as a road" intended thereby to provide a means whereby a municipal corporation may acquire property of a person, firm or corporation without compensation through the refusal of a State Highway Commission engineer living within the city to recommend that the property be transferred back to the grantor. The city has a right to eminent domain for the property it needs, Sec. 17, Art. 1175, V.A.T.S., and through that means the people as distinguished from one person, firm or corporation stand the expenses. "Citizens" as used in Art. 6673a have no right of eminent domain. To read "use of municipal corporations for street purposes" into "use of citizens as a road" is to add something completely different to what the statute says or what Easley holds.

It is of interest to note in its first amended original answer the State of Texas pleaded " * * * the remaining portion of said land * * * was not utilized or appropriated to the development * * * as originally intended and that the State of Texas or its agent, the Texas Highway Department, has no further use for that remaining portion * * * and has stood ready, willing and agreeable to relinquish all of its rights, title and interest in that remaining portion * * * provided, it could have been determined to whom the land in question should have been or could be at this time conveyed." Then in the pleading upon which it went to trial the state pleaded it had no need or use for the subject land and has no foreseeable need for " * * * said land as a right-of-way or for any other highway purposes."

The record also shows that the city counsel of the City of Lubbock passed a resolu-

tion in 1961 stating a survey had been made by its engineer as to the need for such property and it had been determined that it was not needed as a part of its public street system. Then after the Keeton suit was filed and after the letter of the state's attorney in 1964 to the city's attorney suggested the intervention, the City Counsel of the City of Lubbock in 1966 passed a resolution stating such property is needed by the city as an integral part of its public street system.

▇ Even if the Supreme Court does not agree with this court's interpretation of the four steps above mentioned concerning the transfer of property theretofore acquired, as those steps apply to our case, there is still a question raised of arbitrary and capricious action or abuse of discretion by the administrative agency, the State Highway Commission, in not transferring the property back to the grantor after the consideration by which it had been acquired, failed. Our Supreme Court in Fire Department of the City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1949) has held:

"Statutory review by the courts of acts of administrative agencies has been upheld too often to be open to question. Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, rehearing denied 126 Tex. 296, 87 S.W.2d 1069, 101 A.L.R. 1393; Shupee v. Railroad Commission of Texas, 123 Tex. 521, 73 S.W.2d 505; Bradley v. Texas Liquor Control Board, Tex.Civ. App., 108 S.W.2d 300; Turner v. Bennett, Tex.Civ.App., 108 S.W.2d 967; Dept. of Public Safety v. Robertson, Tex. Civ.App., 203 S.W.2d 950. An administrative agency, though vested with discretion in its acts, must not exercise its powers arbitrarily or capriciously, and the reasonableness of its orders is, and under our system of government must be, subject to judicial review."

That case also holds that "* * * even without express statutory authorization the orders entered by an administrative body pursuant to legislative sanction are subject to judicial review."

▇ We turn now to appellants' point which asserts material fact issues were raised with respect to Keeton's right to recover the subject land on the ground of failure of consideration. Keeton's affidavit stated O'Brien made representations "* * * that the state would actually construct a highway as represented" and that he executed the deed solely upon the representations of Al O'Brien that said highway would be constructed as he represented and in consideration of the benefits "* * * which it was represented would accrue to adjacent land by virtue of such construction." It is clear from this record that such consideration failed and that a material mutual mistake prompted the execution of the deed. Since the summary judgment evidence raises questions of legal fraud and mutual mistake parol evidence is admissible to prove the conditions under which the property was conveyed. It is academic that parol evidence is admissible to set aside a deed acquired by fraud or mutual mistake. 23 Tex.Jur.2d, Evidence, Section 363, pp. 538 and cases cited under footnote 18; 23 Tex.Jur.2d, Evidence, Section 364, p. 540 and cases cited under footnote 4.

▇ "It is well settled in this state that material misrepresentations, though innocently made, relied and acted on by the party to whom made, constitute legal fraud. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am.St.Rep. 900; Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808; Henderson v. S. A. & M. G. R. Co., 17 Tex. 560, 67 Am.Dec. 675; Gibbens v. Bourland (Tex.Civ.App.) 145 S.W. 274; Paschal v. Hudson (Tex.Civ.App.) 169 S.W. 911; Davis v. Driscoll, 22 Tex.Civ.App. 14, 54 S.W. 43. Knowledge on the part of one making misrepresentations that they are false is not a necessary element in actionable fraud. Magill v. Coffman (Tex.Civ.

App.) 129 S.W. 1146; Ford v. Sims (Tex. Civ.App.) 190 S.W. 1165; Mid-Continent Life Ins. Co. v. Pendleton (Tex.Civ.App.) 202 S.W. 769." Poindexter v. Davis, 27 S.W.2d 139 (Tex.Comm'n App., Sec. B, 1930). In Buchanan v. Burnett just cited the Supreme Court said: "The fact that Buchanan believed that he had a good title to the land when he sold it and when he made the deed to Burnett was unimportant, if in fact Burnett believed the representations to be true and relied upon them, making the purchase upon the faith of the statements made by Buchanan." In Henderson v. Railroad Co., supra, the Supreme Court said: "The defendants are in the enjoyment of the plaintiff's property, without having verified any of the professions by which they induced him to part with it, without having rendered any equivalent consideration whatever. The plaintiff has derived none of the promised benefits to himself from the defendants' undertaking. The contract has operated as a gross imposition and fraud upon him * * *. To hold that a man may be thus deceived, imposed upon and deprived of his property by false hopes held out to him by another, and that he shall be wholly without redress for the injury done him, would be shocking to common sense and the sense of justice."

In Magill v. Coffman, supra, the court said: "It is the rule in Texas that it is not material whether the party misrepresenting the fact upon belief of which another is induced to act, knew it to be false, or believed it to be true; he is still responsible for the injury sustained by the party who relied on it."

Honoring the inferences which must be indulged against a judgment summarily rendered, the affidavit of Keeton states that O'Brien made positive statements as to where the highway would be constructed, not just that it was the proposed route. Therefore, under the authorities just cited a showing was made of legal fraud, which makes the parol evidence admissible to show the actual consideration for the execution of the deed. The same is

true of mutual mistake. Accordingly, a fact issue was raised as to failure of consideration. "Generally a failure of consideration implies that a consideration, once existing and sufficient, has become worthless or has ceased to exist or has been extinguished, partially or entirely. Radford v. Radford, 388 S.W.2d 33, 39 (Mo.Sup. 1965). A conveyance may be set aside in whole or in part upon failure of consideration. Cummings v. Moore, 27 Tex.Civ. App. 555, 65 S.W. 1113 (Dallas, 1901, writ ref'd); Brady v. Cope, 187 S.W. 678 (Tex. Civ.App.—El Paso, 1916, n. w. h.); City of Lubbock v. Walsh, 316 S.W.2d 923 (Tex. Civ.App.—Amarillo, 1958, writ ref'd, n. r. e.).

We have not written on appellants' point raising the question alternatively of a material fact issue for damages because we believe strongly that the questions discussed show fact issues to be decided. The State of Texas' Motion For Rehearing points out that Mr. O'Brien's testimony is not available to affirm or deny Mr. Keeton's testimony by affidavit because he is deceased. Further communication by counsel for the State has called to our attention that the State of Texas was mistaken in this respect. It is altogether possible that Mr. O'Brien may completely contradict Mr. Keeton's testimony with respect to the consideration for the execution of the deed. That makes a fact issue for the jury to pass upon, and that is the proper way for this case to be decided. Any other way would be a complete miscarriage of justice. A holding that Keeton's property could be taken and retained under the facts shown in this case would mean that anyone's property would not be safe if deeded to the State or its political subdivisions without charge upon other considerations and with philanthropic intentions. Neither have we written upon the question of the intervention plea. In view of our holding we believe it unnecessary.

The judgment of the trial court is reversed and remanded for a trial upon the merits.