## BANK SAVINGS LIFE INS. CO. v. STEINER.

### No. 11603.

Court of Civil Appeals of Texas. Dallas.
March 30, 1935.

Read, Lowrance & Bates, of Dallas, for appellant.

Owen T. Lewis, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, E. A. Steiner, instituted this suit against appellant, the Bank Savings Life Insurance Company, in a district court of Dallas county, to rescind a life insurance policy issued to appellee and described as a "Retirement Income Bond," and to recover with interest the premiums paid for three consecutive years. On a trial to the court, judgment was entered in favor of appellee, rescinding the insurance contract and awarding judgment for premiums that had been paid. From this judgment appellant has duly perfected an appeal, and the following are the facts:

Appellant is a foreign life insurance corporation, with its home office at Topeka, Kan., lawfully doing business in this state and maintaining an office in the city of Dallas, with W. V. Connell, and Marcus S. Miller as agents, Connell being in charge of such office. Appellee, after considerable negotiations with said agents, applied for and was issued the policy before named, on December 1, 1929. Appellee is a single man, 39 years of age, conducting a small business in the city of Dallas, and the moving cause inducing him to take this form of insurance, with its heavy annual premiums, was the loan feature of said policy. Under a column headed "Guaranteed Cash Loan and Non-Forfeiture Benefits," paragraph one thereof, headed "Cash

Loan," reads: "Beginning with the third contract year, if there has been no default in payment of premium, the Company will make loans on the sole security of this contract. The loan may be for any amount not in excess of the cash surrender value for the end of the current contract year, less any unpaid premiums for such contract year. Interest shall be at the rate of six per cent per annum payable in advance to the end of the current contract year, and annually in advance thereafter. A loan agreement and assignment of the contract satisfactory to the Company must be executed and sent with the contract to the Company at its Home Office."

In connection with the loan agreement, the policy contains a "Table of Guaranteed Values." Under this table, after the premium had been paid for three years, the loan guaranteed appellee on his policy was $800. Under the terms of the policy, appellant gave to itself ninety days within which to make the loan after it had been applied for.

Under the insurance contract, appellee was required to pay an annual premium of $468.-80, but could substitute for such annual payment semiannual payments of $243.78 each. Appellee paid the $468.80 when he received the policy, i. e., December 1, 1929, and for the second year he paid the premiums semiannually, i. e., $243.78 due December 1, 1930, and $243.78 due June 1, 1931, and the same payments for the third year. On each year he took the grace of 31 days, allowed by the contract. After the semiannual installment due June 1, 1932, had been paid, the contract guaranteed to appellee a loan of $800 on the insurance policy, and on or about July 9, 1932, appellee wrote to appellant, at its home office, that he wanted the loan for $800. The blanks for making application and instructions in reference to such loan were at once sent to appellee from the home office, and appellee, complying with such instructions, filled out the application form, indorsed the policy to appellant, and sent the application and the policy to appellant's home office at Topeka, Kan. The policy is still in possession of appellant. The application for the loan was accepted by appellant, but appellee was informed that it would be some eighty or ninety days before his application could be taken care of, because of an "epidemic" of loan applications at said time. After the ninety days had expired, appellee made several complaints to the local office at Dallas, because he had not received the loan, and he was made various promises to the effect that the money on the loan would be received in a few days. Appellee finally wrote to the

home office of appellant, complaining about not receiving his loan under the contract agreement, and making demand that it be sent by December 1, 1932, or he would take some action in regard to the matter. After December 1, 1932, no reply having been received from the insurance company, appellee instituted this suit to rescind the contract and to recover, with interest, the premiums he had paid. Appellant answered the suit with a general demurrer, a number of special exceptions, and a special plea, with allegations attempting to show that appellee was not entitled to the relief he asked for in his petition, and an alternative plea, as follows: "In the alternative, this defendant would pray the court that the policy be valued and the maximum loan value be allowed after charging the premium for the year beginning December 1, 1932 and such loan be made on the basis of the proper order of the court and all costs herein be taxed against the plaintiff."

After the suit was instituted, and on December 16, 1932, appellant mailed to appellee a check in the sum of $800, in full payment of the loan applied for. This check was returned to appellant by appellee, with the statement that he had already instituted suit, and that the business deal that he wanted to make with the use of the money had fallen through because of appellant's failure to send the check within the required time.

Appellee's sister, Miss Lillian Steiner, who is blind, and resides in El Paso, Tex., is named as beneficiary in the insurance policy issued to appellee. She joined as a party plaintiff in appellee's third amended original petition for the purpose of relinquishing any claim she has on said policy by reason of being named the beneficiary thereof, and under such allegation she relinquishes any claim on appellant as beneficiary.

The primary question on this appeal is: Does the case made by the pleadings and evidence authorize the court to enter the judgment of rescission and the award to appellee of the amount of the premiums paid on the policy, with interest at the rate of 6 per cent. per annum from the date of each payment?

█ An insurance policy is a contract entered into between the insurer and the insured, by which each party becomes bound to perform the obligations assumed in the policy of insurance. The legal principles controlling an insurance contract do not differ from the legal principles controlling other contracts. An insurance contract is execu-

tory until it has matured according to its terms. In the instant case, appellee is asserting the right to rescind the contract because of a breach by appellant of one of its main obligations. Texas Jur. vol. 10 p. 383, § 217, gives a general rule in reference to the right of rescission by one party to a contract because of a breach of such contract by the other party; this rule is supported by numerous Texas authorities cited in the footnotes, and reads: "The breach of an executory contract in a material respect or a failure or refusal by one party to perform it ordinarily entitles the other party to rescind, in the absence of counter equities forbidding such relief. The party not in fault may treat the contract as rescinded where the agreement is by its terms mutual and dependent, and the other party fails to perform his part, or where his obligation to perform presupposes the doing of some act by the other party which the latter neglects or refuses to perform. But not every material breach will authorize a rescission under all circumstances. A contract which has been fully executed cannot be rescinded for a breach; one who has received benefits from a valid contract entire in character cannot rescind it entirely, but may recover his damages; and as a general rule, subject to exceptions, a court of equity will not rescind or cancel a contract for a mere breach thereof, since an action for damages will ordinarily afford an adequate remedy."

The allegations in appellee's petition bring this case within this rule, in that it shows that not only was the loan feature a material part of the contract, but was a moving feature which caused appellee to enter into the contract; and also shows that appellee could not have been adequately compensated in damages for the injury he suffered by reason of appellant's refusal to perform the loan provision of such contract. These allegations appellee sustained by substantial evidence. The contract of insurance, together with such evidence, shows two dominant purposes which moved appellee to enter into the contract, viz.: (1) The purchasing of an income bond that would mature and bring him in an income after he had reached the age of 65 years; and (2) the ability to secure a loan under the loan feature of the insurance contract, from time to time, as his business might demand the use of such money. It is infer-

able from appellee's testimony that he was moved more by the loan feature of the contract than he was by its retirement income feature.

 "Insured may maintain a suit in equity to cancel or rescind the contract for fraud on the part of the company or its agent, or for breach of contract, and equity has exclusive jurisdiction of a suit by insured to cancel a policy which is at variance with the preliminary agreement for insurance and insured's acceptance of which was induced by fraud." 32 C. J. p. 1268, § 473. In order to maintain a suit for rescission of an insurance policy, because of the breach of a provision guaranteeing a loan to the holder of such policy, the loan provision must be one of the dominant purposes that actuated the insured in entering into the contract, and the condition existing in respect to the contract must be such as that, if the rescission is allowed, the insurance company will be placed substantially in the same position it occupied previous to the making of the contract; the insured must not have been paid actual or substantial benefits while the contract was in force. If such status will exist, then a court of equity can allow a rescission, and place the insured in the position he occupied at the time the contract was entered into, by awarding him judgment for the return of the premium payments he had made. The trial court entered judgment in favor of appellee, and as there are no findings of fact made by the court, every fact necessary to support the judgment, which is sustained by substantial evidence, must be assumed as found by the court in favor of appellee.

 As there is substantial evidence to show that the dominant purpose in securing the policy was the money-loan feature guaranteed by the policy, that appellant breached this provision, and that from such breach appellee suffered injuries that cannot be fully compensated in damages, and that appellant will be placed substantially in the same position it occupied at the time the contract was entered into, we hold that the judgment of the trial court is supported by evidence, and that the case should be affirmed. All assignments of error are overruled.

Affirmed.